EMMALINE HOGAN *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    March 6, 1907. — May 14, 1907.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Negligence.    Elevated Railway.    Carrier,* Of passengers.

It is not evidence of negligence toward its passengers on the part of a corporation operating an elevated railway whose trains run through a subway, that while one of its trains was standing still at a station in the subway it permitted passengers to pass from one car to another without warning them of the existence of a space between the platforms of the cars into which they might step and be injured ; nor, *semble*, is it evidence of such negligence that a guard on the platform of one of the cars said " step into the forward car and move quickly " and that a woman passenger in trying to do so failed to notice the space between the platforms and stepped into it and was injured.

TORT for personal injuries alleged to have been received by the plaintiff on August 25, 1901, while a passenger on an elevated train of the defendant.    Writ dated February 28, 1902.

In the Superior Court the case was tried before *Mason,* C. J. The plaintiff was a woman twenty-eight years old.    She testified that in company with three other women she transferred from a surface car to an elevated train bound north at the Park Street station in the subway in Boston at about two P. M.    There was a large crowd getting on the elevated train and the guard " was telling them to step quickly."    They " were hurrying to

get in." Her party "seemed to be about the last ones to get in." The train started soon after they got on. Her party went upon the front platform of the second car. She saw there were no seats in the second car. "The second car was crowded and we were told to step into the other car." Other passengers were passing into the first car by the platform ahead of her, and consequently there was a crowd of passengers on the platform. She started to cross into the car ahead where there were seats, being the third of her party to do so, and, as she stepped from the platform of the second car, she stepped down between the second and first cars and fell. She "saw the others go by all right" and "did not notice any space until" she "was down there." Her sister and one Mrs. Heimlein, who were of the party, went ahead of her. She was "close behind" the latter, and other people who "seemed to be a crowd," were "following up back of" her. She thought "a guard was on the front platform of the second car." She heard him say "step quickly!" The passengers were all hurrying. "They were crowding back of" me. "There seemed to be a crowd, I did not look around to see. . . . There was quite a crowd . . . crowding before" me. "My whole leg went down." The guard "pulled me out." The space where the plaintiff went in "was large enough for a body to go down."

On cross-examination she testified that she did not step into the body of the second car at all. "Just looked in, saw that there were no seats." That as she "went across" from car to car she did not "look down to see whether there was any space or not, or what space there was;" that she "saw the others go by all right," and "did not know there was any space"; that she knew that the train was made up of separate cars and had been on an elevated train once before, and the first she knew her left leg went down and the guard came and picked her up; no one pushed her.

The plaintiff's sister testified that when they stepped on the front platform of the second car she was the first in the party; that she looked for a seat in the second car, and there was no seat; that the car was crowded; that she looked the other way and saw there was room in the first car, so she "passed through there," and her "friends" came next; there were a

few seats in the first car; that there was a large crowd getting on to the car at the time they got on and the guard was saying "Step lively! Step quickly!" That she did not remember whether the guard gave any directions as to where she was to go. On cross-examination she testified that the guard's direction to "Step lively" was given while the people were getting on the train.

Rosa Heimlein, who was the second of the party to get on the train, and next preceded the plaintiff in getting on and in going from the second car to the first, testified that "there was a very large crowd" boarding the car and the preceding witness was ahead of her. "We wanted to get in the 'second car' and the guard there said 'step into the forward car and move quickly'"; that she followed the preceding witness and the plaintiff was behind; that the guard was looking in her direction when he said that.

Annie Randall, the fourth member of the party, testified that she was back of the plaintiff; that she noticed after the plaintiff fell how wide the space was and that it looked large enough for a body to go through; quite a space; that she did not hear the guard say anything before the car started; that there was nobody between her and the plaintiff; that she could not tell just how many besides them got on, "there was such a large crowd on the platform"; that she thought "there were a few more got on" behind them, but she thought they were "almost the last ones"; that she followed the other three.

A witness for the defendant testified that there was a passageway from platform to platform thirty inches wide with uprights on either side of each car, and there was a chain on either side running from car to car parallel with the track; that the space between the cars at their centre was seven and a half inches widening to ten and a half inches at the sides of this passageway; that this space was necessary because of the sharp curves and steep grades on the system, particularly in the subway, and experiment had shown that a continuous platform such as is used on vestibule trains of steam railroads could not be used.

One Carmichael, the guard in question, was called by the defendant and testified that he stood with one foot on each car,

with his back against the chain farthest from the station plat-
form, pushing the chain back with his body, facing the station
platform, and that he was as far back as he could get on the
side of the passageway between the cars farthest from the
station platform; that as he opened the gates to take on pas-
sengers and while the passengers were boarding, he called out to
them "All aboard! Step lively!" That he gave no directions
to the plaintiff to go on to the front car; that several passengers
passed by him from the second to the first car, and that the
plaintiff in so doing fell between them, while the train was at
a standstill; that the chains were then on; that he had hooked
them himself.

On cross-examination, he testified that he was not positive of
calling "Move quickly!" more than once; that it was a busy
part of the day; that he had been a guard for about two weeks;
that he was anxious that the passengers should get on before
the car started; that he supposed that he did say "Move
quickly!" more than once if he felt it ought to be said to hurry
the passengers up; that he did not direct them to go into the
forward car.

The foregoing was substantially all the evidence on liability.
At the close of the evidence 'the defendant asked the Chief
Justice to make, among others, the following rulings :

1. Upon all the evidence in the case the plaintiff is not en-
titled to recover.

2. There is no evidence of negligence on the part of the
defendant in constructing its cars and car platforms.

10. It was not negligence on the part of the defendant to per-
mit passengers to pass from one car to another while the train
was at a standstill.

11. There is no duty upon the defendant to notify passengers
who are crossing from one car to another while the train is at a
standstill of the existence of the space between the cars.

The second ruling was given as requested, but the Chief Justice
refused to give as instructions the first, tenth, and eleventh rul-
ings requested. On the tenth and eleventh rulings requested
he charged in substance that if the space between the cars and
permitting passengers to cross over it between the cars "were
all there were to the plaintiff's case," the court would be obliged

to direct a verdict for the defendant, but that in this case there was evidence that, with full knowledge of all the conditions existing there, a representative of the defendant company directed passengers to cross over the space in question, from one car to the other . . . coupling such direction with an admonition to move quickly, and that upon this evidence, it not being " in controversy but that the plaintiff and her associates were permitted by the guard to cross from one car to the other," and " that the crossing was in his presence and with his knowledge and his assent, without warning of any special danger," the court could not say as matter of law that negligence could not be found upon all the evidence, and that it must be determined as a question of fact, and that it was a question for the jury to say whether the defendant was negligent in permitting a passenger to cross from one car to another without warning as to the existence of a space between the cars if such a direction and admonition were given.

The jury returned a verdict for the plaintiff in the sum of $2,100 ; and the defendant alleged exceptions, which after the death of Chief Justice Mason were allowed by *Richardson*, J.

The case was submitted on briefs.

*H. Bancroft & W. Shuebruk*, for the defendant.

*H. C. Mulligan*, for the plaintiff.

MORTON, J.   We see no evidence of negligence on the part of the defendant.   The judge ruled as requested by it that there was no evidence of negligence on its part in the construction of the cars or of the car platforms.   We think that he also should have ruled as requested by the defendant that it was not negligence on the part of the defendant to permit passengers to pass from one car to another while the train was at a standstill, and that there was no duty on its part to warn passengers of the existence of a space between the cars under such circumstances.   It seems to us that the case is fully covered in all of its aspects by previous cases and that the jury should have been directed to return a verdict for the defendant.   *Welch* v. *Boston Elevated Railway*, 187 Mass. 118.   *Falkins* v. *Boston Elevated Railway*, 188 Mass. 153.   *Wilworth* v. *Boston Elevated Railway*, 188 Mass. 220.   *Field* v. *Boston Elevated Railway*, 188 Mass. 222.   *Hilborn* v. *Boston & Northern Street Railway*, 191

Mass. 14. *Hawes* v. *Boston Elevated Railway*, 192 Mass. 324. There was no such condition of things as existed in *Kuhlen* v. *Boston & Northern Street Railway*, 193 Mass. 341, or in *Warren* v. *Fitchburg Railroad*, 8 Allen, 227, cases relied on by the plaintiff.

*Exceptions sustained.*