LUCY A. PLUMMER *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.   December 11, 12, 1907. — May 20, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Negligence,* Railway in subway.  *Practice, Civil,* Conduct of trial, Judge's charge, Exceptions.

In an action of tort against an elevated railway company by one who, when a passenger in a station in a subway through which the defendant's railway ran, received personal injuries by falling between the station platform and the side entrance of a car as he was attempting to enter the car, it appeared that the car could not run closer than twenty-one inches to the platform of the station at the point where the side door of the car opened, and that the defendant had provided a movable extension of the permanent platform, which was intended to slide out from under the permanent platform to the car and thus to close the open space.   The plaintiff's evidence tended to show that the car which he was attempting to board stopped in such a place that, when the movable platform was extended, it was opposite only a part of the door, there being an open space opposite the rest; that other passengers were in front of and close beside the plaintiff as he started to enter the car, so that he could not see the open

space, that an employee of the defendant called out "Step lively," that the passengers preceding the plaintiff passed into the car safely at almost the same place that he attempted to enter, but that the plaintiff fell into the open space. The defendant requested the presiding judge to rule that there was no evidence that the plaintiff was in the exercise of due care, and that, if he by looking could have seen the hole into which he stepped, and did not look, he was not in the exercise of due care. The requests were refused. *Held,* that the requests were refused rightly, since there was evidence that the plaintiff was in the exercise of due care, and the question for the jury was not as stated in the second of the above requests of the defendant, but was, whether an ordinarily prudent person under the circumstances should have looked so as to have discovered the danger.

An exception to the refusal of the judge presiding at a trial to give a ruling in the words in which it is requested will not be sustained, although the ruling requested is a correct statement of the law applicable to the case on trial, if it appears that it was given in substance in the judge's charge to the jury.

At the trial of an action of tort against an elevated railway company, by one who, while as a passenger he was in a station in a subway through which the defendant's railway ran, was injured by falling between the platform of the station and the door of a car of a train which he was attempting to enter, there was evidence tending to show that, from the construction of the subway, for which the defendant was not responsible, the car which the plaintiff attempted to board could not, at that point, be brought nearer than twenty-one inches to the permanent platform of the station, that, to fill the gap thus formed, the defendant had provided a movable extension platform, which was the best device then known for the purpose, that an employee of the defendant on the station platform had been instructed not to pull out the extension platform if the car did not stop in front of it, that an "average" motorman would run the train too far for the extension platform to cover the whole space in front of the car door about once a day, and the most cautious motorman less frequently, that, at the time when the plaintiff was injured, the car stopped in such a position that the extension platform would cover the space in front of only half of the car door, but that the defendant's employee extended the movable platform nevertheless and the plaintiff, attempting to enter, in the exercise of due care, fell into the uncovered space. *Held,* that there was evidence from which the jury were warranted in finding that the employees of the defendant were negligent.

An exception to a ruling by the judge presiding at a trial allowing a certain question to be put to a witness will not be sustained if it appears that the answer of the witness to the question did the excepting party no harm.

At the trial of an action of tort against an elevated railway company to recover for injuries received by the plaintiff through his falling into a space between a car of a train of the defendant, which he was attempting to enter, and the platform of a station in a subway, there was evidence tending to show that the space into which the plaintiff fell was left uncovered by a movable extension platform, which was intended to cover it, because the train had been run by the place where it should have stopped for the movable platform to be used properly. The defendant requested, but the presiding judge refused to give, a ruling that, "If the defendant had adopted and had in use, with respect to its platforms and the means afforded to passengers for entering cars, the best practical devices known and obtainable at the time of the accident, then the defendant was not negligent with respect to the construction of its platform or the means afforded to passengers for entering cars." *Held,* that the ruling properly was

refused, since, even although the movable platform was the most perfect device known and was perfectly constructed, its operation in connection with the train which the plaintiff was attempting to board might have been found to be negligent.

While under ordinary circumstances it may not be negligent for an employee on the platform of a station of an elevated railway to call out to the passenger "Step lively," still, if, by the operation of a movable extension of the station platform, which was intended to cover a space between the car door and the platform, and by the operation of the train with reference thereto, a dangerous place was created for the passengers to pass over in entering the car, such an exclamation by the employee might be considered as one circumstance tending to show negligence for which the elevated railway company was liable.

A trial judge cannot be required to rule in general terms upon the effect of a particular and indecisive portion of the testimony.

An exception to a portion of a charge to a jury will not be sustained although the portion excepted to, if read alone, misstates the law, if, when read with the whole charge, it correctly states the law with regard to the facts in evidence.

The provisions of R. L. c. 173, § 80, that "the courts shall not charge juries with respect to matters of fact, but they may state the testimony and the law" do not prevent a trial judge from accurately summarizing the testimony, or from furnishing to the jury guides or illustrations as to the meaning of equivocal language given in testimony and as to tests by which the reliability or credibility of witnesses may be determined; but the established practice, consistently followed in this Commonwealth, is to preserve to the trial judge the power and to impose upon him the duty of so enlightening the intelligence and directing the attention of the jury that, notwithstanding disparity in skill, ingenuity and efficiency with which the various issues are presented, justice may be even, and incline one way or the other only according to the weight of credible evidence.

It is error for a judge presiding at a trial before a jury to suggest in his charge a ground of liability of the defendant which is not clearly open under the pleadings and as to which no evidence has been introduced by either the plaintiff or the defendant.

TORT for personal injuries received by the plaintiff while attempting to enter the side door of a car of a south bound elevated train in the Scollay Square station of the defendant in Boston, January 3, 1903.    Writ dated April 8, 1903.

The specification in the declaration as to negligence of the defendant was that the plaintiff "was injured by reason of the negligence and carelessness of the defendant, its agents, officers and servants who so carelessly operated one of the defendant's cars and who so carelessly constructed, maintained, controlled and operated a moving platform connected with said permanent platform that a dangerously wide space was left between the door of said car and said permanent platform."

There was a trial before *Bond*, J.    There was no contention

by the plaintiff but that the defendant had proper air brakes and proper appliances on the train in question for bringing it to a stop, and the plaintiff admitted that there was plenty of light where the accident occurred.

In direct examination, the defendant's witness Kelly, referred to in the opinion, testified that, at the time the plaintiff was injured, he was standing opposite the door when the plaintiff started to enter the car, that he, the witness, pulled out the sliding platform and that it was perfect with the side door, that there was a brace that ran at an angle from the corner of the sliding platform which went against the door and that left a triangular space that was vacant, that the plaintiff stepped into this triangular space; that the sliding platform went on a straight line to the door; that, the first he noticed of the plaintiff, she was facing this triangular place, and that, when she went to board the train, he called out "Wide step"; that nobody else stepped into that space; that two or three got off and a number got into the car there. On cross-examination he testified that he saw the plaintiff as the train was standing there before she went into the hole, that she was facing this space; that he was told when he took charge of this platform that, if there was any space between the platform and the car where the people enter, not to pull out the slide; that, when the train stopped, the sliding platform came along with the door and the plaintiff was up from the door and when she went to board the car, instead of boarding the car as other passengers did at that time, she "went to cut around and her foot went down into the hole"; that by that he meant she wanted to cut into the door on the side.

At the close of the evidence, the defendant requested the presiding judge to rule as follows:

"1. There is no sufficient evidence that the plaintiff was in the exercise of due care.

"2. There is no evidence that the defendant or its servants or agents were negligent.

"3. If the plaintiff by looking could have seen the hole in which she claimed to have stepped, and did not look, then she was not in the exercise of due care, and cannot recover. . . .

"5. The plaintiff was bound to take notice that there must be some space between the platform and the train, and, if the

conditions were such that the plaintiff could have seen the space and reasonably stepped over it, and did not do so, then the plaintiff is not entitled to recover.

" 6. There is no evidence of any negligence of the defendant in the construction of the platform.

" 7. It was not negligence on the part of the defendant for its servants or agents to tell passengers to step lively.

" 8. It was not negligence on the part of the defendant to omit to warn passengers of the existence of the space.

" 9. It was not negligence for the motorman of the train to fail to stop his train so that the door of the car would be exactly opposite the sliding platform along the whole width of the door.

" 10. The defendant, its agents and servants, had a right to assume that the plaintiff would look and take heed with her steps in attempting to board the train.

" 11. If the defendant had adopted and had in use, with respect to its platforms and the means afforded to passengers for entering cars, the best practical devices known and obtainable at the time of the accident, then the defendant was not negligent with respect to the construction of its platform or the means afforded to passengers for entering cars.

" 12. On all the evidence the width of the space between the permanent platform and the door of the car was something for which the defendant was not responsible, and the existence of the space between the permanent platform and train was not negligence."

The presiding judge refused to grant the requests except so far as they were covered by his charge, and the defendant excepted. Portions of the charge were as follows:

" The plaintiff had the right to assume that the defendant company had performed its duty with reference to the safety of the passengers and to act upon that assumption. She was not obliged to assume that there were dangerous places where she was invited to go to get into the car. She had the right to assume that, so far as due care on the part of the defendant would make it reasonably safe for her to enter the car, they had performed that duty towards her. Of course, if she had notice to the contrary, then the rule would not apply. If the plaintiff knew, or in the exercise of reasonable care ought to

have known, that there was a space in front of the door between the door and the platform, into which she might step, then it was her duty to have avoided the place that was there, the dangerous place, whatever it was. If she had been in the habit of taking the car at this place and she had noticed that it was the practice to have a space of that kind at that particular point, so she had the right to expect that that would be there, then she had notice, she had reasonable cause to believe that there was the place there. But she testifies, if I remember correctly, that she had never noticed — she had not been there very much, but I think she said she had not noticed that there was any such place there. You will remember about that, perhaps, better than I do. She was asked with reference to that and she testified to it. But I do not understand it is claimed on the part of the defendant that it was the custom to have such a space there uncovered by the movable platform, so perhaps it is unnecessary to say that she was called upon to notice that there was such a space there when it is not claimed that it was the custom to have it.

"Of course, if the plaintiff in going towards the door of the car had seen the space in front of her before she stepped into it, she should have avoided it; she should not have stepped into it.

"Now, the question comes for your consideration what she ought to have understood from what the man Kelly said, the man who stood by the side of the platform and who said he called out, ' Step wide '; and I noticed this morning the expression was used that what he said was ' Wide step.' It is for you to say whether what he said was ' Step wide,' or ' Wide step.' If she had understood from that that he meant there was a hole there that she would step into, then that was notice to her that there was a place there that she should avoid. And it is for you to say just what a person would understand, assuming that she heard what he said. She herself testifies, as I remember it, that he said ' Step lively.' The testimony of ' Step lively,' if that is true, might indicate to her that everything was safe so she could step without any regard to the condition of things, because everything was all right to go on, only hurry. But if it was ' Step wide ' and she heard it or ought to

have heard it, just what did that mean? Did it mean to her
that there was a hole there that she would step into if she
didn't look out? The expression 'Step wide,' in and of itself
may not be so definite. There is a difference between a wide
step and a long step, and just what is meant by a 'wide step'
perhaps is not so clear. If he had said, 'step long,' that might
have been understood as indicating that there were some places
where it would not do to take a short step, — you must look out
and step long. But it is not claimed that is what it was. He
says he said, 'Step wide.' Did he have in his own mind the
fact that there was a hole there and was giving notice to the
passengers to avoid it? He says himself that there wasn't any
hole there, that the platform came up to the edge of the door
so that, as I have said to you, there was no trouble then
in the passengers going in. What was there to 'step long'
about, or 'step short' about, or 'step wide' about if the
space was entirely filled up where the plaintiff ought to have
gone and where all the passengers should have gone? He is
the one who testified that that platform came up to the edge of
the door. . . .

"If it was not practical with the highest degree of care on the
part of the motorman to stop his car so as to bring that movable
platform up in front of the door, then you may consider whether
that was a proper arrangement. But, if it was not practical to
stop the car so that the movable platform would come up in
front of the door, although it allowed the leeway of going two
feet beyond or stopping two feet short and still have been rea-
sonably safe — if it was not possible to do that — if it could not
do any better than the four feet, then you should consider whether
or not that was a proper arrangement, whether something else
should not have been done. Could the motorman have stopped
that car at a better place than he did with reference to the
safety of the passengers? Was his failure to stop it so that
the door would come within the width of the movable plat-
form — was that from inattention, negligence, the want of
proper care on his part? Because if it was, that is the neg-
ligence of this defendant company. Although the platform
might have been all right and the movable platform in connec-
tion with it might have been all right, still if the motorman paid

no attention to the platform and ran his car without any regard to where it was going to stop, and that was from inattention or neglect on his part, and that was what caused this space which you may say was defective, then that is the negligence of the company and the company is responsible for it. . . .

"You may also consider whether or not this man Kelly, the man who said he was a brakeman on the platform, the man who did the calling out — whether when he saw the situation of things — and if it was as he says, there was nothing further to be done about it, but if it was not as he says but was substantially as the plaintiff claims here, then whether or not the exercise of proper care on his part would not have required him to have gone over on the other side of that movable platform and stood in front of this opening, if it was a dangerous one, and simply told parties that they could not have come there. He need not have said 'step wide,' 'step long' or 'short'; he need not have said 'step lively' unless he wanted to, but he would have stood there. Now, what was there for him to do over where he was on the other side of the platform? If he could have gone over to this place and kept people from going into this dangerous place, if it was dangerous, and he did not do it, and that was not the exercise of that degree of care which the company was called upon to exercise, then that may be considered by you as to whether or not the company was not negligent in not having a man go over there and leaving him where there was nothing to do but to make some call which perhaps might or might not give the passengers notice of just what he wanted."

At the close of the charge, the defendant excepted specifically as follows:

"To that portion which says she was not obliged to assume that there were dangerous places to which she was invited.

"To everything that was said about end doors in the charge — as to the consideration by the jury whether it was negligence not to use them instead of the side door.

"To what was said with reference to Kelly saying there was no hole, and the interrogatory of the judge as to what he meant by saying 'Step wide.'

"To everything that was said by the judge with reference to

any ambiguity in the meaning of 'Wide step' or 'Step wide' or that the term 'step wide' or 'wide step' was not clear.

"To everything that was said by the judge with reference to the possibility that the words 'step lively' might mean that everything was safe or could be so construed.

"To the statement that it was not claimed that it was customary to have a space.

"To the instruction that it might be held negligence for Kelly not to go and prevent passengers from approaching the place where the space was.

"To the instruction that if it was not practical with the highest degree of care on the part of the motorman to stop his car so as to bring that movable platform up in front of the door, then the jury might consider whether that was a proper arrangement, whether something else should not have been done.

"To the instruction that it was for the jury to say whether or not twenty-one inches of a space was negligence, whether that was as good an arrangement as could be made by the highest degree of care on the part of the defendant or on the part of the servants or agents of the company."

There was a verdict for the plaintiff, and the defendant alleged exceptions. Other facts and portions of the charge are stated in the opinion.

*J. T. Hughes*, (*W. J. Holbrook* with him,) for the defendant.

*L. H. Wardwell*, (*S. A. Fuller & J. L. Monahan* with him,) for the plaintiff.

RUGG, J. 1. The question of due care on the part of the plaintiff is a close one. The place of the accident was well lighted. The estimates of horizontal distances between the side door of the car and the edge of the permanent platform varied from fourteen to twenty inches, and the maximum possible distance including a lurch of the car was twenty-one inches. The contention of the plaintiff (which the jury, in view of other instructions given, must have found to be correct) was that, when the sliding platform was projected out against the car, the space in front of about one half the width of the door, or twenty inches, was not bridged. It was estimated that there were eight or ten other passengers trying to board the car at this place. The plaintiff testified that she heard the guard say, "Step

lively," that there was no one directly in front of her, but that people were in front of and close beside her so that she could not see the open space, and that, in order to have observed it, she would have been obliged to stop, and would thus have obstructed the way of others behind her. The facts that other passengers were passing safely into the car, in the same way, at nearly the same place as the plaintiff attempted to, and that as to one half the door the step of the entering passenger needed to cover only four to six inches, while as to the other half the step required was from fourteen to twenty-one inches, in conjunction with the hurry call of the guard and the hour of the day, were circumstances which, with all the other attendant conditions, made the plaintiff's due care a question for the jury. *Hilborn* v. *Boston & Northern Street Railway*, 191 Mass. 14, is distinguishable on the ground that the only structures there in question were the permanent platform, constructed according to plans of the subway commission, and the distance from the car to the platform was the same throughout the width of the car step. Here by act of the defendant the distance between the car and the platform was from two to three times as wide on one part of the car door as on the other, and this circumstance, together with the appearance of safe walking over the space by those near her, may have been found to have relieved the plaintiff of the obligation of such close scrutiny as she would otherwise be held to exercise, and which might have revealed the danger. These circumstances also distinguish this branch of the present case from *Willworth* v. *Boston Elevated Railway*, 188 Mass. 220.

The defendant's requests for rulings numbered three, five and ten relate to the plaintiff's due care. The third request properly was refused. The standard in a case like the present is not whether the "plaintiff by looking could have seen the hole . . . and did not look," but whether it was reasonable conduct for ordinarily prudent people under the circumstances disclosed to so look as to discover the danger. The fifth request was an accurate statement of the law, but it was in substance given by saying that "if the plaintiff knew or in the exercise of reasonable care ought to have known that there was a space . . . into which she might step, then it was her duty to have avoided the place . . ." The same is true of the tenth request. The de-

fendant in the operation of its trains and the management of its platforms had a right to assume that the plaintiff would take reasonable heed as to her steps in boarding the car, and this the jury were told in substance in the charge.

2. There was sufficient evidence to warrant the submission of the question of the defendant's negligence to the jury. If there had been no movable platform installed by the defendant, it is clear that there would have been no evidence of its negligence, under the decisions of this court before cited. It is true that the defendant, so far as disclosed by the evidence, had installed movable platforms solely for the purpose of narrowing the space necessarily existing between the permanent platform and the car door where the tracks are upon sharp curves, and thus protecting the travelling public against their own want of care. These platforms were much wider than the car door, but there was evidence tending to show that once a day the average motorman, and less frequently the most cautious, would not be able to stop the train so that the entire width of the car door would be adjacent to the edge of the movable platform. But it was open to argument that, notwithstanding this evidence, the running of the car on this occasion may have been due to inattention and other carelessness on the part of the motorman, or that it was negligent not to run the train a little further before opening the door so that it would be opposite the platform. There was evidence also that this device was the best known for the purpose, and that no contrivance to serve the same purpose was in use elsewhere. Nevertheless, the defendant knew, or ought to have known, of the possibility that the platform would not always cover the width of the door. It may have been regarded as negligence to have opened the side door of the car before the train was so adjusted to the platform that there would be no open space. The brakeman in charge of the platform testified that he had been instructed not to pull the platform out when there would be such space left. It may also have been found that, having pulled it out under conditions which constituted a disobedience of orders, he should have taken a position so as to prevent passengers from crossing the unprotected and uncovered space or to warn them of the danger. This was evidence of negligence to be weighed by the jury.

For this reason the ruling requested, that it was not negligence to omit to warn passengers of the existence of the space, was properly refused.

The charge of the judge that it was for the jury to say whether it was negligent for the defendant not to have some one at the place to give warning, and as to the action of the brakeman, was ample and correct. The precise condition existing was one created by the defendant, and might have been found, in the respect of leaving one half the car door bridged by the sliding platform and the other half unbridged, more dangerous than if no attempt whatever had been made to span the space and, by reason of this special danger, to impose an obligation upon the defendant which would not otherwise have rested upon it. The jury were instructed in substance that for the construction of the permanent platform and the space existing between it and the cars, the defendant was not responsible. This disposes also of the defendant's last request.

3. The defendant called an expert engineer, who testified at length respecting the experiments made by the defendant as to the movable platform in connection with moving and loaded trains, and that it was the best and only device of the sort in use anywhere. He then was asked on cross-examination, " Would it not have been a proper thing to have had platforms in there at that time — to have had more than one platform . . . or wider platforms ? . . . in the light of your . . . present knowledge of conditions of things, would it not have been at that time a proper thing ? " Upon objection being made, the judge ruled that the witness should answer " with all the information he has now whether it would not have been proper to put that in." This ruling is not clear in its meaning. If it was intended that the witness should answer in the light of his present knowledge as to whether it was practicable at the time of the accident to have had better appliances, it was correct. But if it meant that in view of experiments made, experience gained, inventions or devices discovered, since the accident, it was in his opinion practicable at the time of the trial to put in something better, then it plainly was wrong. The liability of the defendant was to be determined upon the footing of what might reasonably be required of it in the light of knowledge then existing, not that

acquired afterwards.   *Whelton* v. *West End Street Railway*, 172
Mass. 555.   *Stevens* v. *Boston Elevated Railway*, 184 Mass. 476.
But, however the ruling may have been understood, the answer *
was stated by the witness to be based upon knowledge possessed
at the time of the accident, so the defendant was not harmed.
The witness was cross-examined without further objection at
some length, and then plaintiff's counsel contended in his final
argument that the witness knew of some better device and would
not disclose it.   No interruption of the argument was made by
opposing counsel in order to save an exception; nor was any
request made for a ruling based upon the argument (*Commonwealth* v. *Coughlin*, 182 Mass. 558.   *Sayles* v. *Quinn*, 196 Mass.
492), and therefore no exception is open to the defendant upon
this ground.

4. The sixth request was that there was no evidence of any
negligence of the defendant in the construction of the platform.
This was in substance given.   The issue between the parties
was stated early in the charge to be whether the side of the
movable platform was or was not substantially two feet from the
door, and the jury were then told that if they should find that
the movable platform came to the edge of the door, so that the
entire space between the door and the permanent platform was
covered, their verdict must be for the defendant.   Later they
were told that there was no defect in the apparatus, if it was
properly managed with reference to the car.   The judge then
proceeded to discuss the management of the platform, and left
to the jury the question whether it was all in all a proper " arrangement " and whether something more might have been done.

---

* The answer of the witness was : " I do not think I am qualified to
answer that question, and if allowed I will explain the reason.   I am now
chief engineer of motive power and rolling stock and was at that time in
charge of the elevated division, of the operation of the road, and that includes in the operation of the road the number of passengers we are carrying,
their egress and ingress into the cars, and the sizes of the platforms on which
the people are to be left or to be congregated and the methods of putting
the people into and out of the cars.   These were my duties at that time, but
my present position does not cover all these points.   I have not forgotten
what knowledge I had at the time I was superintendent of that division of
the road.   I can answer according to my knowledge I had at that time.   I
have paid no attention to that subject the last two years."

But these remarks related to the doing of something by the motorman or other employees, and not to anything regarding the apparatus itself, his charge in this respect as above stated being left without qualification. This disposes also of the eleventh request, which was in substance given, so far as it was sound. But it did not follow, because the movable platform was the most perfect device known and was perfectly constructed, that the defendant would not be negligent as to the means afforded passengers for entering the cars. The operation of the movable platform in connection with the train might still be found to be wanting in that degree of care required in a carrier of passengers.

5. The defendant asked for an instruction that it was not negligence for its servants to tell passengers to "step lively." Ordinarily this bald statement by an employee of the defendant in the subway is not negligence. *Hawes* v. *Boston Elevated Railway*, 192 Mass. 324. But here was a situation where, as has been pointed out, there was evidence from which the jury might have found that a dangerous place existed by reason of the act of the servant who called to the passengers to step quickly. If some act of the defendant had created a danger not existing with trains and platforms in their normal condition, then it might not be the proper course for the defendant to hurry the passengers into this particular danger. The instructions given were, " The testimony of ' Step lively,' if that is true, might indicate to her that everything was safe so she could step without any regard to the condition of things, because everything was all right to go on, only hurry." This was open to exception, but, on the judge's attention being called to this subject, he corrected it by saying that perhaps the statement was not carefully made; that to call out " ' Step lively ' . . . would not be negligence . . . assuming that everything was in proper condition for the people to step lively." This qualifying assumption must not be taken abstractly, but in connection with the contention that negligence on the part of the defendant respecting the management of the movable platform in relation to the train had created a particular danger apart from those naturally to be apprehended, and must be confined to acts of the defendant, and not construed as applying to permanent conditions.

6. It could not have been ruled as matter of law that there

was no evidence that it was negligence for the motorman of the train to fail to stop his train so that the door of the car for its whole width would be opposite the sliding platform. There was abundant testimony to warrant this finding as a fact, but it was a question of fact and not of law upon the evidence disclosed. Moreover, this was not exactly the issue nor a decisive finding in any event, for, as was pointed out in the charge, this car came to a stop about four feet short of the ideally correct point, and it might have been practicable to go forward a little in order to reach a place where it would have been safe. It would have been eminently appropriate to have given more full instructions as to the evidence of caution of the motorman, and what it was possible for him to do even under the most perfect conditions and with the highest degree of skill. But the failure to do so cannot be said to be error. A trial judge cannot generally be required to rule upon the effect of a particular and undecisive view of a portion of the testimony.

7. Several exceptions were taken to the charge. The jury were instructed that the plaintiff "was not obliged to assume that there were dangerous places where she was invited to get into the car." This, standing alone, would not be true in view of the recent subway decisions. *Hilborn* v. *Boston & Northern Street Railway*, 191 Mass. 14. *Hawes* v. *Boston Elevated Railway*, 192 Mass. 324. *Hogan* v. *Boston Elevated Railway*, 195 Mass. 313. There are dangerous places about the subway trains, arising out of its construction. These are conditions wholly beyond the control of the defendant. But this had been fully explained in the early part of the charge, and the sentence objected to was followed immediately by the statement that "She had the right to assume that, so far as due care on the part of the defendant would make it reasonably safe for her to enter the car, they had performed that duty towards her." Taking the sentence with its context, it is not open to exception.

While charging upon the due care of the plaintiff, the judge said, among other matters, that if she had been in the habit of taking cars at this place, and had observed that it was the practice to have a space of the kind complained of, then that would be notice of it to her, and then he added (after stating her testimony): "But I do not understand it is claimed on the part of

the defendant that it was the custom to have such a space there uncovered by the movable platform, so perhaps it is unnecessary to say that she was called upon to notice that there was such a space there, when it is not claimed that it was the custom." The evidence upon this point, all of which came from the defendant's witness, was that, " It is a difficult thing to stop at a given point the train at the Scollay Square platform ; the best man . . . will probably not miss that stop by more than two feet, more than a couple of times a week; the average man . . . won't miss it more than once a day by two feet. . . ." This showed that it was not the custom for trains so to stop that the movable platform eight feet in width would not cover the entire door space three and one third feet wide, and, as bearing upon the duty of the plaintiff to observe the condition from what she had seen before or ought to have expected, it was not inaccurate for the judge thus to summarize the evidence.

Exception was also taken to that portion of the charge which dealt with the testimony of Kelly, to the effect that there was no hole and that he called out " Wide step " or " Step wide," and it is strongly argued that this amounted to a charge on the facts, and was in violation of R. L. c. 173, § 80, which prohibits courts from charging " juries with respect to matters of fact," but provides that courts " may state the testimony and the law." An interpretation of the meaning of this section was given by Bigelow, C. J., in *Commonwealth* v. *Barry*, 9 Allen, 276, as follows: " The prohibition must be regarded as a restraint only on the expression of an opinion by the court on the question whether a particular fact or series of facts involved in the issue of a case is or is not established by the evidence. In other words, it is to be construed so as to prevent courts from interfering with the province of juries by any statement of their own judgment or conclusion upon matters of fact. This construction effectually accomplishes the great object of guarding against any bias or undue influence which might be created in the minds of jurors, if the weight of the opinion of the court should be permitted to be thrown into the scale in deciding upon issues of fact. But further than this the legislature did not intend to go. The statute was not designed to deprive the court of all power to deal with the facts proved. On the contrary, the last clause of

the section very clearly contemplates that the duty of the court may not be fully discharged by a mere statement of the law. By providing that the court may also state the testimony, the manifest purpose of the legislature was to recognize and affirm the power and authority of the court, to be exercised according to its discretion, to sum up the evidence, to state its legal effect and bearing on the issues, and to indicate its proper application under the rules of law." While under this rule it would have been the exercise of a wiser discretion to have been more guarded in expression, it cannot be said that the language criticised transcended the authority of the court. It was not the intention of the statute that the court should be shorn of all right to furnish to the jury guides or illustrations as to the meaning of equivocal language given in testimony, and as to weighing the evidence of witnesses, and as to tests by which their reliability or credibility may be determined. In some jurisdictions a more strict limitation is placed upon trial courts. But we adhere to the practice early established under the statute, and consistently followed in this Commonwealth, of preserving to the trial court the power and imposing upon it the duty of so enlightening the intelligence and directing the attention of the jury that, notwithstanding disparity in skill, ingenuity and efficiency with which the various issues are presented, justice may be even and incline one way or the other only according to the weight of credible evidence. *Commonwealth* v. *Larrabee*, 99 Mass. 413. *Harrington* v. *Harrington*, 107 Mass. 329. *Cook* v. *Bartlett*, 179 Mass. 576. *Burns* v. *Donoghue*, 185 Mass. 71. *Morrison* v. *Richardson*, 194 Mass. 370. *Partelow* v. *Newton & Boston Street Railway*, 196 Mass. 24. *Whitney* v. *Wellesley & Boston Street Railway*, 197 Mass. 495. A careful examination of the charge as a whole fails to convince us that it quite falls within the inhibition of cases like *Commonwealth* v. *Foran*, 110 Mass. 179, and *Commonwealth* v. *Leonard*, 140 Mass. 473.

Exception also was taken to the portion of the charge respecting the use of the end doors of the cars instead of the side door. Upon this subject the judge said: " Suppose this car came up to that movable platform in such a way as to leave a place there, which was dangerous for passengers to go out or get in, whether or not it would not have been within the power of the company

to have let the passengers out at the end doors instead of taking them out at the middle door. The end doors, as I suggested to you at the outset, were close up to the permanent platform and there was no danger there in getting out or in. Was there anything there in the condition of things which made it necessary in order to run that train that the passengers should go out the middle door? If they could have been sent out at the end doors and the passengers taken in at the end doors, and they did not do this, and they did not do it because they were not paying attention to the safety of the passengers, that would be negligence on the part of the company." This is objectionable on two grounds. It raised an issue which was not open on the pleadings. The specification of negligence in the declaration related solely to operation of the car and the construction, maintenance and operation of the moving platform, so that between the door of the car and the permanent platform there was a dangerously wide space. No negligence was alleged except in connection with the door used and the movable platform. There was nothing to call attention to an alleged negligence in permitting the side door to be opened at all and in failing to use the end doors instead. No evidence touching the possibility or reasonableness of using the end doors for the entrance of passengers under the conditions then existing had been introduced. It was not proper for the judge to suggest a ground of liability after the evidence was closed and arguments concluded, which was not clearly open under the pleadings and as to which no evidence had been proffered, and to permit the jury to speculate as to whether or not, without the aid of testimony, they thought this was negligence. Further, the concluding sentence was a statement that the failure to open the end doors would be negligence. The most that the judge would have been justified in saying under the circumstances of the case, even if there had been evidence touching the subject, was that it would be possible for the jury to find negligence upon the evidence. *Millmore* v. *Boston Elevated Railway,* 194 Mass. 323.

*Exceptions sustained.*