EDITH L. ANSHEN *vs.* BOSTON ELEVATED RAILWAY
COMPANY.

Suffolk. November 18, 1909. — February 23, 1910.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Negligence*, At station of subway. *Carrier*, Of passengers. *Evidence*, Of negligence, Competency.

In an action by a woman passenger against a carrier which operated trains of elevated railway cars in a subway, for personal injuries caused by falling into the space between a car forming part of such a train and the platform of a station in the subway, from which the plaintiff was attempting to enter the car, the plaintiff testified that on account of the crowd she could not look down to see where she stepped and that her movements were constrained by the crowd around her. She also testified that, although she paid no attention to the space between the platform and the car, it was because she thought she " had been going along " and felt that she " was safe, and, knowing that there was a platform there and feeling that it was used," she did not " feel unsafe or uncertain about the ground." This court, in deciding that there was no evidence of negligence on the part of the defendant, was not prepared to say that, had there been such evidence, the question of the plaintiff's due care might not properly have been left to the jury.

In an action by a woman passenger against a carrier which operated trains of elevated railway cars in a subway not constructed by the defendant, for personal injuries caused by falling into the space between a car forming part of a five-car train of the defendant and the platform of a station in the subway, from which the plaintiff was attempting to enter the end door of the second car of the train, it appeared that the platform was nearly straight for a part of its length

and for the rest of its length was on a concave curve, that trains of different lengths were used at different hours of the day, and that during the hours when the traffic was heaviest five-car trains were run, that underneath the permanent platform were five movable or sliding platforms for the purpose of bridging the space between the permanent platform and the cars, that these sliding platforms were operated by means of levers moved by two men on the permanent platform and were intended to be used in connection with the middle doors of the cars but were not intended to be used and were not used for the doors at the ends of the cars, that the distance from the permanent platform to the centre of the door by which the plaintiff was attempting to enter was normally eight inches and might vary two inches more or less owing to the swing and oscillation due to passengers getting in and out and to other causes.  One witness testified that by estimation this distance at the time of the accident was nine and one half inches.  The same witness testified that she visited the subway on the day after the accident and that the movable platform at the place of the accident then was extended.  The evidence tended to show that where the cars and the platform were parallel there was a space of about three inches between them and that this was the least space that could be allowed properly.  The plaintiff contended that the defendant was negligent in not using the movable platform or some other appliance at the time of the accident to lessen the space between the permanent platform and the door of the car by which the plaintiff was attempting to enter.  *Held,* that, inasmuch as the movable platforms were not installed for use at the end doors, the case should be considered as if there had been no movable platforms, and, assuming that the open space was ten inches, which was the greatest width that it could have been found to be, the existence of this space and the failure to bridge it were not evidence of negligence.

In an action by a woman passenger against a carrier which operated trains of elevated railway cars in a subway, for personal injuries caused by falling into the space between a car forming part of such a train and the platform of a station in the subway, from which the plaintiff was attempting to enter the car, the fact that after the accident occurred the defendant took means to prevent a repetition of it is not evidence of negligence.

TORT for personal injuries received on June 8, 1905, by reason of falling into the space between a car forming part of an elevated railway train of the defendant and the platform in the Scollay Square station in the subway in Boston, when the plaintiff was attempting to enter the car, as described in the opinion.  Writ dated August 8, 1905.

In the Superior Court the case was tried before *Fessenden*, J., who ordered a verdict for the defendant, and by agreement of the counsel for the parties and at their request reported the case for determination by this court upon the terms of reservation which are stated in the opinion.

*J. E. McConnell,* for the plaintiff.

*E. P. Saltonstall,* (*S. H. E. Freund* with him,) for the defendant.

MORTON, J. The plaintiff, while boarding a train in the Scollay Square station of the subway, fell into the space between the car and the platform and received the injuries complained of. At the close of the evidence the judge directed a verdict for the defendant, and at the request of counsel reported the case for the determination of the full court. If the ruling was right judgment is to be entered for the defendant. If the case should have been submitted to the jury judgment is to be rendered for the plaintiff for $1,500 damages.

We assume in the plaintiff's favor that the evidence would have warranted a finding that she was in the exercise of due care. She testified in substance that on account of the crowd she could not look down so as to see where she stepped, and that her movements were constrained by the crowd around her. She also testified that, although she paid no attention to the space between the platform and the car, it was because " I thought I had been going along and I felt that I was safe, and knowing that there was a platform there and feeling that it was used I didn't feel unsafe or uncertain about the ground." We are not prepared to say that the question of the plaintiff's due care might not properly have been left to the jury. See *Plummer* v. *Boston Elevated Railway*, 198 Mass. 499.

But we fail to find any evidence of negligence on the part of the defendant. The platform of the station was nearly straight for a part of the distance, and for the rest of it was on a concave curve. The extreme ends were very narrow, not over two feet, in width, and for a distance which was longer at one end than at the other the cars and the platform were nearly parallel, with a clearance of about three inches, which the testimony tended to show was the least that could be properly allowed for. Trains of different lengths were used at different hours of the day. During the hours when there was the heaviest traffic five-car trains were run, and during other hours trains of three and four cars. Of necessity, owing to the manner in which the subway was constructed, with which the defendant company had nothing to do, five-car trains overlapped each end of the platform. That was not so with three or four car trains. Underneath the permanent platform were five movable or sliding platforms for the purpose of bridging the space between the

platform and the cars.    These were operated by means of levers moved by two men on the platform, and were intended to be used in connection with the middle doors of the cars.    Three-car trains were stopped so that there were sliding platforms opposite the centre doors of the second and third cars, there being no necessity for one opposite the middle door of the first car, as that car was practically parallel with the platform and only three inches from it.    On four-car trains there were sliding platforms opposite the middle doors of the second, third and fourth cars, there being none opposite the middle door of the first car for the reason given above in regard to the first car of a three-car train.    Five-car trains, partly because of overlapping the platform and partly because the first, second and fifth cars were practically parallel with the platform, were stopped so that there were sliding platforms opposite the middle doors of the third and fourth cars, but none opposite the middle doors of the first, second and fifth cars.    Owing to the manner in which the sliding platforms were constructed and the triangular space that would be left, they were not intended for use at the ends of the cars and the uncontradicted testimony was that they were not so used.    It was a five-car train which the plaintiff was attempting to board when injured, and she was attempting to enter at the end door of the second car.    The distance from the permanent platform to the centre of the door was normally eight inches and might vary two inches more or less, owing to the swing and oscillation of the car, caused by people getting in and out, and to other causes.    One witness testified that by estimation the distance on the day of the accident was nine and one half inches.    The same witness also testified that she visited the subway the next day after the accident and that the movable platform was then extended.

The plaintiff contends that the defendant was negligent in not using the movable platform or some other appliance so as to lessen as much as possible the space between the permanent platform and the car, and thereby to guard against the danger of such an accident as occurred.    But as was said in *Hilborn* v. *Boston & Northern Street Railway*, 191 Mass. 14, 17, "There always must be a space between the steps of a car running through the subway and the platform upon which passengers

are expected to alight, and passengers must expect this to be so."
In the case before us the minimum clearance that had to be
allowed for between the cars and the platform was three inches.
The plaintiff does not contend that it was necessary, even if
possible, to cover that space; and the case of *Willworth* v. *Boston
Elevated Railway*, 188 Mass. 220, is a direct authority to the
contrary.   This would leave the additional space to be taken care
of seven inches at the most, with a possibility that that would be
reduced to five, if the normal distance of eight inches from the
platform to the centre of the end door be taken into account.
We have been referred to no case in which, considering the
necessities of elevated and subway railroad construction, it has
been held that failure to bridge a space thus existing or liable
to exist between the platform and a car constituted negligence on
the part of a defendant company.   See *Hogan* v. *Boston Elevated
Railway*, 195 Mass. 313, and cases cited; *Ryan* v. *Manhattan
Railway*, 121 N. Y. 126; *Fox* v. *Mayor of New York*, 70 Hun,
181; *Rothchild* v. *Central Railroad*, 163 Penn. St. 49.   In
*Plummer* v. *Boston Elevated Railway*, 198 Mass. 499, where the
maximum space was twenty inches, it was said that if there had
been no movable platforms there would have been no evidence
of the defendant's negligence.   In the case before us the mov-
able platforms were installed not for use at the end doors, but
at the middle doors, and therefore the case may be regarded so
far as the end doors were concerned as if there had been no
movable platforms.   Even at its widest, which would be ten
inches, the distance would be no longer than the step of a child
and very much less than the step of the ordinary man or woman;
and the defendant cannot, we think, be justly charged with neg-
ligence in failing to guard against such an accident as befell the
plaintiff.   There was nothing to show that the like ever had
happened to any one there before.   The fact that after the acci-
dent occurred the defendant took means to prevent a repetition
of it cannot be regarded as evidence of previous negligence.
Nor was there anything in the size or conduct of the crowd on
the day of the accident, and on other days at about the same
hour, to bring the case within *Kuhlen* v. *Boston & Northern
Street Railway*, 193 Mass. 341.   Neither was there anything, as
in *Plummer* v. *Boston Elevated Railway*, *supra*, to show any

negligence on the part of the motorman as to the place where the cars were stopped. The result is that in accordance with the report the entry must be

*Judgment for the defendant.*