EMERY BOURBONNAIS *vs.* WEST BOYLSTON MANUFACTURING
COMPANY.

BENJAMIN D. KELLY *vs.* SAME.

Hampden.    September 23, 1903. — October 20, 1903.

Present: KNOWLTON, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Negligence*, Employer's liability.    *Evidence*, Competency, Remoteness.

In actions by two carpenters for injuries alleged to have been caused by their being
set to work by the defendant's superintendent upon an unsafe temporary staging,
constructed in an elevator well in a mill building, there was evidence, that one
upright of the staging was fastened insecurely, and that two braces which at
first had been used to keep it in place had been removed before the accident,
that the staging was built by a superintendent of the defendant, for another job
for which it had been used successfully as the plaintiffs knew, that another su-
perintendent in effect told the plaintiffs to use the staging in doing their work
and was at one time on the staging while the work was going on and knew that
the plaintiffs were using it, that neither the superintendent who caused the
staging to be built, nor the one who ordered them to work upon it or saw them
at work there, had inspected the staging at any time since its completion.    The
staging fell while the plaintiffs were at work upon it and they were injured.
*Held*, that whether the superintendents were negligent in furnishing the staging,
and in directing or allowing the plaintiffs to use it, and whether the plaintiffs
were in the exercise of due care, were questions of fact for the jury.

In an action by a carpenter for injuries caused by the fall of a temporary staging
built in an elevator well, there was conflicting evidence as to whether one of the
uprights of the staging rested on brickwork.    An expert was allowed to testify,
that to build such a staging with one corner resting on a brick ledge was not a
proper construction, also to give his reasons for this opinion and to testify as to
the tendency of a brick ledge to loosen under pressure.    *Held*, that there was no
error in the admission of this evidence, and that it was not necessary for the
judge to exclude it because the questions did not contain a statement as to the
whole construction of the staging.

In an action by a carpenter against his employer for injuries caused by the fall of
a staging, evidence of a custom among carpenters, to make an examination of a
staging to see whether it is in proper condition before going upon it, is not com-
petent upon the issue of the plaintiff's due care without showing that the plain-
tiff knew of the custom.    Whether if such knowledge were shown the evidence
would be competent was not passed upon.

TWO ACTIONS OF TORT, by carpenters against their employer,
for personal injuries alleged, among other things, to have been
caused by the negligence of a superintendent of the defendant
in setting the plaintiffs to work upon an unsafe staging, that

being the substance of the count and specification on which each case was submitted to the jury. Writs dated November 16, 1899.

In the Superior Court the cases were tried together before *Maynard*, J. The jury returned a verdict for Bourbonnais in the sum of $3,300, and for Kelly in the sum of $800. The defendant alleged exceptions, which are described by the court.

*W. Hamilton*, for the defendant.

*F. F. Bennett*, (*A. L. Green* with him,) for the plaintiffs.

BARKER, J. The plaintiffs were together upon a staging at work when it fell precipitating them from the third story to the bottom of a tower. The general work going on was the repair and renovation of a mill building, and some fifty or sixty workmen were employed among whom were several gangs of carpenters, as well as millwrights, masons, painters and plumbers. The plaintiffs were carpenters and when the accident occurred were engaged in enlarging an old elevator opening in the fourth floor of the tower and in fitting the opening for a new and larger elevator which was to be put in. The staging consisted of uprights, most of which rested on the third floor of the tower and rose to within three or four feet of the fourth floor and of braces to hold the uprights in place, and of plates nailed to the tops of the uprights, and planks forming the top or floor of the staging. It occupied the whole of one side of the third floor of the tower, the elevator opening through the third floor being under the staging and that through the fourth floor being over the top or floor of the staging. Two of the uprights were in corners of the third floor room of the tower, one in the northeast corner and one in the southeast corner. The upright in the northeast corner fell down the elevator opening which was in that corner of the room, thus letting down the flooring of the staging on which the plaintiffs were at work. There was evidence tending to show that the foot of this upright rested upon brick and was insecurely fastened, and that two braces which at first had been put to keep it in place had been removed after the construction of the staging and before the accident. The cases went to the jury upon one count only of each declaration, which counts alleged negligence of a superintendent, the plaintiffs contending that the negligence consisted in setting them to work in an

unsafe place.   It is now admitted that there was evidence which
would justify a finding that the two men whom the plaintiffs
contended were superintendents were such within the meaning
of the employers' liability acts.   The cases had been tried once
before and there was a conflict of evidence upon many matters
involved.

The defendant requested that verdicts in its favor should be
ordered upon a variety of grounds, and also requested instruc-
tions upon different aspects of the case.   The judge refused to
order verdicts for the defendant, and gave the jury full and
complete general instructions on the questions of due care, as-
sumption of risk and other matters to which no exceptions were
taken, and refused to give the rulings requested either in form
or substance except as appears from a part of the charge stated
in the bill of exceptions.   The defendant excepted to the re-
fusal to give the rulings requested and to the rulings given in so
far as they varied and were inconsistent with the rulings re-
quested, but pointed out no particulars in which the charge had
varied from or was inconsistent with the rulings requested.   The
bill also states some exceptions upon questions of evidence.

It is not contended that the staging was one constructed by
workmen who were set to do a piece of work which involved the
necessity of having a staging and who accordingly built it for
themselves.   On the other hand the staging was built to enable
a special piece of work to be done, and was ordered by one of
the superintendents and built by two workmen under his su-
pervision before he proceeded to have done the special job for
which the staging was ordered.   This was the removal from the
fourth story of the tower of the drum by which the old elevator
was operated.   The drum weighed six or seven hundred pounds
and in course of removal was handled by five men whose weight
with that of the drum had been upheld by the staging.   This
was about a fortnight before the plaintiffs were hurt, and in the
meantime the staging had also been used in taking out a heavy
beam which supported the fourth floor of the tower and in level-
ling or lowering that floor.   Nor was the staging such an appli-
ance as would have been put up by the plaintiffs or by any other
workmen in order to enable them to do the work of enlarging
and fitting the elevator openings.   The evidence would justify

a finding that while the plaintiffs had no part in building the staging they did know that it had been caused to be erected by one of the superintendents for the work of removing the drum, and that it had been successfully used in doing that work, and subsequently in removing the beam and levelling the floor above and then allowed to remain as if for further use. We think it might be found also from the evidence that the plaintiffs were in effect though not in express words told by a superintendent to use the staging in doing their work, and also that this superintendent was at one time on the staging when that work was .going on and knew that they were using it, and that neither the superintendent who had caused the staging to be built, nor the one who ordered them to work upon it or saw them at work upon it had inspected it at any time since its completion.

Under such circumstances we think it was open for the jury to find that the staging was furnished by the defendant through its superintendents as a completed structure or appliance for the use of the plaintiffs in the particular work of enlarging and fitting the elevator opening in the fourth floor; and that the questions whether the superintendents were negligent in furnishing the staging, in not inspecting it before allowing the plaintiffs to use it, and in directing or allowing the plaintiffs to use it, and also the question whether the plaintiffs were in the exercise of due care in working upon it were all questions of fact for the jury.

This requires us to overrule the exceptions to the refusal to give the first, second, third, fourth, fifth, sixth and seventh requests and to the charge so far as it was not consistent with them.

As to the thirteenth, fourteenth and fifteenth requests it is enough to say that there was evidence tending to show that one or more braces which had been put on to hold in place the corner post which fell were not a part of the staging when the fall occurred, to say nothing of the evidence that one upright rested only on brick.

The subjects treated of in the eighth, ninth, tenth and twelfth requests related to due care and assumption of risk concerning which full and complete general instructions were given to which no exception was taken, and besides this they seem to have been

correctly dealt with in the portion of the charge which is set out in the bill of exceptions.

The fall of a staging which the jury could find had been furnished as a completed structure to be used in doing a certain work and then allowed by a superintendent to remain in place and be used as a means of doing other work cannot be held to be a transitory or passing risk of employment like that of falling through openings made or left in floors, as in *Beique* v. *Hosmer*, 169 Mass. 541, on which the defendant relies in support of its exception to the refusal to give the eleventh instruction requested, which was refused rightly.

The only other request, the second, was that no sufficient service of notice was made. Neither the exception to the refusal of this request nor that to the admission of evidence of the service made of the notices given by each plaintiff has been argued and we treat these exceptions as waived.

Three exceptions were taken to questions asked of an expert called to testify by the plaintiffs. The first question was in substance whether it would be a safe construction to erect the staging with one corner post resting upon a brick ledge; the second, the witness having answered that it was not proper construction, called for the reasons for that opinion, and the third was as to the liability of a brick ledge to loosen under pressure.

In support of these exceptions the defendant contends that there was no evidence that when the staging was constructed the northeast post or upright rested on the brick. But the witnesses who testified that that upright rested on a wall plate of timber when the staging was first made also testified that it never rested on the brick work, and in the conflict of testimony the jury might find that the upright always rested on the brick work. Nor was it imperative that the judge should exclude the question because it did not contain a statement as to the whole construction of the staging. We find no error in the admission of these questions.

The remaining exception is to the rejection of the defendant's offer to prove that there was a custom among carpenters to make an examination of a staging to see whether it is in proper condition before going upon it. In support of the exception the defendant contends that the evidence was relevant to the ques-

tion of the plaintiffs' due care, as it would have tended to show that they must rely upon ascertaining for themselves whether the staging was safe before going upon it, and not depend for assurance of its safety upon inspection by the superintendent.

Without passing upon the question whether the evidence of such a custom would have been competent upon the question of the plaintiffs' care or negligence if they knew of the custom, it could not affect them unless they knew of it, and it is enough to say in overruling the exception that the defendant did not offer to show that they knew of it.  *Collins* v. *New England Iron Co.* 115 Mass. 23, 25, and cases cited.  See also *Dodge* v. *Favor*, 15 Gray, 82.  Without that the offer was in effect to show what other workmen were accustomed to do, and would open a multitude of collateral investigations, which the judge properly could decline to allow the defendant to bring in to the trial.

*Exceptions overruled.*