NETTIE E. HARRINGTON *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    March 24, 1915. — May 21, 1915.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Negligence,* Elevated railway, In a station.

At the trial of an action against an elevated railway company for personal injuries received by a woman, as she was attempting in the night time to board a car in a train of the defendant at a station, by reason of falling into a space fourteen inches wide between the station platform and the door of the car, there was evidence that the plaintiff had travelled by elevated trains but infrequently and that when she had done so she had observed that the space between the cars and the platform had been four or five inches; that several persons preceded her into the car and that immediately in front of her was a woman with a long skirt which covered the open space so that in a dim light which prevailed the plaintiff was misled into thinking that the skirt was the floor of the car; and that there was nothing in the attitude of the defendant's employees to indicate to the plaintiff her danger. It appeared that the space of fourteen inches was not the ordinary space between the platform and the car, but that it was the result of temporary conditions incident to a necessary change of construction of the station and tracks. There was expert testimony to the effect that leaving the fourteen inch space was not a reasonably proper construction, and that reasonable methods might have been used to reduce that space. *Held,* that the questions, whether the plaintiff was in the exercise of due care and whether the defendant was negligent, were for the jury.

TORT for personal injuries suffered, when the plaintiff was attempting to board a train of the defendant at its elevated station at the North Station in Boston, by reason of falling between the platform and the train. Writ dated January 14, 1910.

In the Superior Court the case was tried before *Pratt,* J. At the close of the evidence, which is described in the opinion, the

judge ordered a verdict for the defendant; and the plaintiff alleged exceptions, which, after the death of *Pratt*, J., were allowed by *Wait*, J.

· *H. W. Packer & J. W. Allen*, for the plaintiff.

*J. T. Hughes*, for the defendant.

PIERCE, J.    On November 7, 1908, just before midnight, the plaintiff, while boarding a train of the defendant at its elevated station at the North Station, fell into the space between the platform of one of the defendant's cars and the station platform, and received the injuries complained of.    At the close of the evidence the trial judge ruled that "there was not sufficient evidence to entitle the plaintiff to have the case submitted to the jury," and ordered a verdict for the defendant.    To this ruling and order the plaintiff duly excepted.    Exceptions also were taken to the admission and exclusion of certain offered testimony, but these exceptions were not argued and are treated as waived.

The plaintiff left her place of employment at about 11.30 or 11.40, P. M., in company with a Mrs. Wallace and a Miss McSherry, to go to her home.    She was wont to travel by surface cars, but on this night she went with her two companions to take the elevated train at the North Station.    They ascended the stairs, paid their fares, and passed to the platform on the side used by south bound trains.    A train soon arrived, and Miss McSherry boarded the first car by the rear door.    She was followed by a number of persons, both men and women.    Then came the plaintiff and behind her Mrs. Wallace.    Directly in front of the plaintiff was a woman wearing a long dress.    Stepping naturally, the plaintiff also attempted to enter the car by this rear door.    The dress of the woman immediately preceding her so covered the step that the plaintiff failed to see it.    She thought in the dim light that she was stepping on the car step, but as a matter of fact she would have stepped on the dress had it stayed there an instant longer.    Mistaking the dress for the step of the car, her step was too short and she stepped into the space, which might be found to have been at least fourteen inches between the car and the station platform. She never before had embarked from this temporary platform, which had been in use in connection with the running of trains only since October 8, 1908.    Before the time of her injury she had occasionally ridden on an elevated train, but had not been upon the

elevated platform at the North Station for about two months be-
fore November 7, 1908.  At these times she observed that the dis-
tance between the cars and the permanent station platform was
perhaps four or five inches.

We have the case of a person perceiving nothing in the attitude
of attendant servants or in the conduct of those about her to
indicate the need of special care.  *Plummer* v. *Boston Elevated
Railway,* 198 Mass. 499.  *Brisbin* v. *Boston Elevated Railway,* 207
Mass. 553.  We have a person ignorant of actual danger, relying
to some extent on memory of customary conditions, and pre-
sumably influenced by the now common knowledge of the public
carrier's obligation to protect its patrons from harm, and of the
probable performance of its duty.  *Plummer* v. *Boston Elevated
Railway, supra.*

The accident took place while the defendant was making ex-
tensive changes in its tracks, platforms, buildings and structures
preparatory to using the Washington Street tunnel.  Before Septem-
ber 9, 1908, at the North Station there was no curve in the edge
of the station platform, and the distance between the platform
and the cars was normally three inches, with a possible oscillation
of from one to two inches either way, which might increase the
space to five inches or reduce it to one inch.  In order to enable
the structure to be built and at the same time to accommodate
travel during the interval between the discontinuance of the old
structure and the completion of the new one, the defendant laid a
temporary south bound track with a southern curve and built the
adjacent platform.  This temporary structure was completed so
that trains began to run over it on October 8, 1908, and it con-
tinued in use until November 30, 1908.  It followed the lines of
the track and was constructed in the form of a curve and a reverse
curve approximately the same degree in circumference.  The space
between the platform of the cars and the station platform varied,
and the distance between the rear door entrance of the first car of
a five car train such as the plaintiff attempted to board and the
platform was about twelve and one half inches at the narrowest
point, and a scant fourteen inches at the widest point, provided
the first car stopped at the exact place indicated for it.  There was
expert testimony that the temporary platform, having reference
to its use in connection with the rear platform of the first car of a

five car train, in the ordinary and usual way and without any special protection was not a reasonably proper construction; and a number of methods of reducing what might be found to be a dangerous distance between the rear door platform of the first car of a five car train and the station platform were indicated, which methods the jury reasonably might find to be practical, efficient and not prohibitively expensive.

It is clear that there was evidence of the plaintiff's due care and of the defendant's negligence. This case is like *Brisbin* v. *Boston Elevated Railway*, 207 Mass. 553, and should have been submitted to the jury.

*Exceptions sustained.*