BOSTON ELEVATED RY. CO. v. TEELE.

(Circuit Court of Appeals, First Circuit. February 5, 1918.)

No. 1287.

1. TRIAL �köw244(4)—INSTRUCTIONS—UNDUE PROMINENCE TO PARTICULAR ACTS.
    The refusal of defendant's requested instruction that particular acts did not constitute negligence was proper, for that would give an undue prominence to those acts which plaintiff did not assert were, taken by themselves, negligence; the negligence charged being a combination of acts.

2. CARRIERS ⊫320(8)—CARRIAGE OF PASSENGERS—ACTIONS—JURY QUESTION.
    Whether a street railway company was negligent in failing to warn passenger that at the place its surface car was stopped there was a considerable space between the car and the platform because of a curve in the platform *held* for the jury.

3. CARRIERS ⊫320(1) — CARRIAGE OF PASSENGERS — NEGLIGENCE — REGULATIONS.
    Where the conduct of the injured passenger was in no way affected by a regulation of the defendant carrier with regard to the point at its platform where cars should stop, the question of the reasonableness of the regulations is properly submitted to the jury.

4. APPEAL AND ERROR ⊫263(1)—REVIEW—EXCEPTIONS REVIEWABLE.
    Defendant's exception to that part of the charge alleged to contain a request of plaintiff cannot be sustained on writ of error, where it appeared from the charge that it was not given as an instruction, but only as a statement of plaintiff's contention.

5. CARRIERS ⊫321(6)—CARRIAGE OF PASSENGERS—TRIAL—INSTRUCTIONS.
    At defendant's transfer point plaintiff suffered injuries when she stepped into a space between the platform and the car. It appeared that the car was first brought almost to a stop at a place where the platform was parallel to the tracks, and was then slowly propelled to the stopping place at which point the platform curved away from the tracks. Plaintiff alleged that such movement of the car, coupled with the fail-

⊫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ure to warn, constituted negligence. The court, having referred to the movement of the car after it was brought nearly to a stop, charged that plaintiff claimed that should be considered, together with all other matters, in determining whether defendant was guilty of negligence, and that such unquestionably was the law. *Held* that, in view of the reference to the preceding contention, the charge was correct.

6. TRIAL ⟨⟩142—PROVINCE OF JURY—CONFLICTING EVIDENCE.
     Where reasonable men may draw different conclusions from the undisputable facts the question is for the jury; but, if only one conclusion is possible, the question is one for the court.

7. CARRIERS ⟨⟩320(8)—CARRIAGE OF PASSENGERS—ACTIONS—JURY QUESTION.
     In personal injury action by a passenger, who on attempting to board defendant's car at a transfer point stepped in the space between the platform which at that point curved away from the tracks and the car, the questions whether defendant, its servants having brought the car nearly to a stop at the point where plaintiff and others were standing waiting, and then slowly moved it to the point where the accident occurred, without giving any warning as to the space between the car and the track, was negligent, and whether the passenger was guilty of contributory negligence, *held* for the jury.

In Error to the District Court of the United States for the District of Massachusetts; Clarence Hale, Judge.

Action by Mary Hazard Teele against the Boston Elevated Railway Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

Endicott P. Saltonstall, of Boston, Mass., for plaintiff in error.

Asa P. French, of Boston, Mass. (Daniel A. Shea, of Boston, Mass., on the brief), for defendant in error.

Before DODGE, BINGHAM, and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge. This is an action of tort to recover damages for personal injuries suffered by the defendant in error, hereinafter called the plaintiff, on August 23, 1914, in the Park Street station of the subway, in Boston.

The case was tried before a jury in the District Court of Massachusetts, and a verdict was returned for the plaintiff.

The plaintiff in error, hereinafter for convenience called the defendant, brings the case before this court on the defendant's bill of exceptions. The errors assigned are the court's denial of the defendant's motion to instruct the jury that upon all the evidence the plaintiff was not entitled to recover and to order the jury to return a verdict for the defendant, the court's refusal to give certain requested instructions, and also the giving of certain instructions.

The record discloses that the plaintiff, a citizen and resident of Chevy Chase, in the county of Montgomery and state of Maryland, on the day of the accident was visiting her husband's cousin, Miss Phœbe Jeanette Teele, in West Somerville, Mass., and had been with her since the first part of June of the same year; that on the morning of that day, which was Sunday, the plaintiff, her little boy, and Miss Teele left West Somerville to go to the Christian Science Church, on Huntington avenue, in Boston. They came to Boston, by way of the Cambridge

subway, to the Park Street station, and there waited for a Huntington Avenue car. They had paid their fares when entering the Cambridge subway, and this fare entitled them to change cars at the Park Street station and take a Huntington Avenue car. The plaintiff had been in this Park Street station but once before. She, with her husband's cousin and her little boy, took a place upon the platform opposite the tracks upon which the Huntington Avenue cars came in. These tracks in front of that part of the platform on which she was waiting were parallel with the platform, and continued so for some distance in either direction; but toward its southerly end the edge of the platform curved away from the tracks.

At the time of the trial the platform had been entirely changed from what it was at the time of the accident; but a plan made by the civil engineer in the employ of the defendant, from plans, measurements, and data concerning the old platform, which were on file in the office and marked "Defendant's Exhibit A," and made a part of the bill of exceptions, shows the platform and whatever was erected upon it exactly as it was on the date of the accident, as claimed by the defendant. As shown by this plan, there were designated places for seven cars during the rush hours of the day, and for six cars during other hours.

The plaintiff waited upon the platform some minutes before a Huntington Avenue car came in on the south-bound loop, opposite the platform on which she stood. It was a short, open car; but the record does not disclose how many benches it contained. When the car reached a position nearly opposite the place on the platform where she was standing, it came nearly to a stop, and she, with others who were standing near her, started towards it for the purpose of boarding it. The car did not come to a complete stop, but continued to move on slowly towards the southerly end of the platform to the car berth designated as No. 2, which was just being vacated by a car ahead of it, and which, during hours other than the rush hours, was also designated as the first car stop by a sign exhibited there.

The plaintiff, with a group of five or six others, including her husband's cousin and her little boy, walked along beside the car, near the edge of the platform, waiting for it to come to a stop, so that they might board it. Miss Teele was ahead of the plaintiff and to her right, and other people were directly ahead of her, and so near her that she could touch them. The car came to a full stop opposite the curve in the platform, near the southerly end, so that the distance between the edge of the platform and the car was wider than where the platform was parallel with the tracks. The distance from the top of the platform to the roadbed was 12 or 13 inches, and the plaintiff stepped over the edge of the platform, at the curve, with her left foot, to the roadbed below, and received the injuries for which she claimed to recover.

It was admitted by the defendant that it used, equipped and controlled the Park Street station as a passenger station, and that the car in question was one of its cars. It was also admitted by the plaintiff that the subway was built by the city of Boston and leased to the West End Street Railway Company, which in turn leased it to the defendant, and that the defendant could not be held for any negligent construction of the platform in question.

In her declaration the plaintiff set forth her cause of action in two counts. The first contains the following allegations:

"That the car which the plaintiff desired to board entered said station and came to a stop opposite a stopping place; that the plaintiff walked across the platform towards the said car. but when close to it, and before she could get aboard the same, the defendant company, by its agents, servants, and employés, negligently, carelessly, and without right, restarted the said car and moved it along said platform to another stopping place, where it again came to a stop; that the plaintiff followed along the platform, close to said car, to the place where said car had again stopped, intending to board it; but the defendant company, by its agents, servants, and employés, being under a duty to transport the plaintiff safely over its line and provide safe and suitable means of ingress to said car, wholly regardless of said duty to said plaintiff in that behalf, and in violation thereof, negligently, carelessly, and without right stopped its car on a curve at said last stopping place in such a position that there was a wide, unsafe, and improper space between the edge of the platform at said station and the running board of said car at the point where the plaintiff was about to get aboard; that the plaintiff was at the time unfamiliar with said station, and by reason of the stopping and negligently restarting of said car before making its stop on said curve at said station, as aforesaid, plaintiff was induced to go along said platform to said stopping place on said curve, and in attempting to board said car, because of said inducement, and because of the fact that the defendant company, by its agents, servants, and employés, had negligently left unprotected said space by stopping said car in said position on said curve, and because of lack of warning by said defendant company, by its agents, servants, and employés, as aforesaid, the plaintiff fell into the said space."

In the second count, in addition to the allegations in the first count, the plaintiff alleged that the said defendant company—

"used the said station at all times as a stopping place for a greater number of cars than the platform was built to accommodate, so that the first stopping place of said cars at said station was then and there regularly located on a curve in the track at the platform of said station."

The record discloses that the car in question did not come to a full stop opposite the place where the plaintiff was standing upon the platform when it entered the station, but that it came nearly to a stop there and that the plaintiff started toward it to board it; but as it moved along toward the southerly end of the platform, she, with others, walked along the platform beside it, in order that she might board it when it had come to a full stop.

Stephen C. Mitchell, a civil engineer, in the employ of the Boston Elevated Railway Company for nearly 20 years, and who made the plan marked "Defendant's Exhibit A," testified that:

"If a 12-bench open car were stopped at berth 2, the space between the running board and the car would be 3 inches at the front of the car, 15 inches at the middle, and 11 inches at the rear of the car. If the same 12-bench car were stopped at berth 1, this distance would be 7 inches at the front, 13 inches in the middle of the car, and 10 inches in the rear of the car."

He also stated that these distances would be slightly greater for a 10-bench open car, and a little greater still for a 9-bench open car. He was asked to assume that a 9-bench open car had stopped at a point which would make a space between the platform and the running board

the greatest possible distance. Upon that assumption he said there would be a space of 17 or 18 inches between the platform and the running board.

The only testimony disclosed by the record in regard to the distance between the platform and the car when it actually stopped was given by Miss Phœbe Jeanette Teele, who had boarded the car and taken a seat on the third or fourth bench from the front, and was then attracted by a scream from the plaintiff, and turned and saw her opposite the seat she was in, with one foot down and the other on the platform. She testified that at the place where the accident happened the platform was farther from the running board than it was farther down where they first started, and estimated the space between the running board and the platform, at the place where the accident happened, as certainly a foot in width, if not more; that some parts of the running board were nearer to the platform than other parts, and at the place where the accident happened was farther away from the platform, which was caused by a curve in the platform; that the station platform, about opposite where the car stopped, started to curve to the right, and by so doing left a space between the platform and the car, as the tracks continued on straight.

The negligence of the defendant set out in the plaintiff's declaration was not alone the stopping of the car at the curve in the platform, nor alone bringing it almost to a stop opposite where the plaintiff and others were standing on the platform, and then moving it along to the place where it finally stopped; but the declaration alleged that these acts together, and the failure to give warning to the plaintiff that she was approaching a place of danger, under all the circumstances of the case and the conditions which prevailed at that time, constituted negligence on the part of the defendant company; or, in other words, that the negligence charged was the manner in which the car was operated in respect to the permanent platform under the circumstances, and that the plaintiff, while a passenger of the defendant and in the exercise of reasonable and proper care for her own safety, by the operating of the car in bringing it almost to a stop and then causing it to move along, was induced to follow the car, with others, along the platform, into an unsafe place, of which she had no knowledge, and could have had no knowledge by the exercise of reasonable care on her part, such as called for by the circumstances of the case, and of which she received no warning from the agents or servants of the defendant.

[1] The presiding judge, in his charge to the jury, stated the claim of the plaintiff as follows:

"The plaintiff puts her case substantially upon this proposition: She says that under all the circumstances of the case the facts ought to induce the belief in your minds that the car was not run with the highest degree of safety consistent with the practical conduct of the defendant's business, and briefly for this reason: She says that she was waiting for a car; that she saw a certain car, which she has described—an open car—come around the curve and come down the track and almost stop; that she, thinking that it was going to stop, stepped up to get upon the car with her cousin; that the car did not in fact stop, but after it had almost stopped it went on down the platform; that she was led to walk along the platform by the side of the car, with other persons before her and behind her, and that

she, in walking along the platform, had reason to suppose that the car was proceeding to stop, and that the motorman and conductor were acting with the highest degree of care consistent with their business, and that it was safe for her to walk alongside of the car; that she did walk along; that she did look at the track, and looked at the platform, but that, when she came to board the car, the car, as a matter of fact, stopped where a certain curve had begun, so that the car was thrown away from the platform for some inches—no matter how far—some feet, 16 or 17 inches; and that she was led to use the car, to try to board the car, without noticing or having her attention called to the fact that the running board was that distance from the car, and that she stepped down into the roadbed."

We find no error in the refusal of the presiding judge to give the instructions, requested by the defendant, that it was not evidence of negligence that the car was stopped opposite the curve in the platform, or that it was slowed down and then proceeded along to the farther end of the platform. It was not contended by the plaintiff that either of these acts alone constituted the negligence of the defendant, but that united they furnished evidence of the negligent operation of the car in question, under the conditions which existed at that station at the time of the accident.

Each of these instructions was therefore inapplicable to the issue raised by the pleadings, and each singled out a single act, and asked the court to give prominence to that act, so that, if given, there was danger that the jury might give undue weight to it. In Perovich v. United States, 205 U. S. 86, at page 92, 27 Sup. Ct. 456, at page 458 (51 L. Ed. 722), Mr. Justice Brewer, in stating the reason for refusing to give an instruction in regard to one act which should be considered in connection with others, says:

"Singling out a single matter and emphasizing it by special instructions as often tends to mislead as to guide a jury. * * * It is merely one link in a long chain, and the court is seldom called upon by special instructions to single out any single link in a chain, and affirm either its strength or weakness."

In Grand Trunk Railway Co. v. Ives, 144 U. S. 408, at page 433, 12 Sup. Ct. 679, at page 688 (36 L. Ed. 485), Mr. Justice Lamar, in considering a refusal to instruct the jury in regard to one act which, with others, was alleged to constitute contributory negligence, uses this pertinent language:

"In determining whether the deceased was guilty of contributory negligence, the jury were bound to consider all the facts and circumstances bearing upon that question, and not select one particular prominent fact or circumstance as controlling the case to the exclusion of all the others."

In Rio Grande Western Railway v. Leak, 163 U. S. 280, 288, 16 Sup. Ct. 1020, 1022 (41 L. Ed. 160), Mr. Justice Harlan says of a refusal to give a special instruction:

"It was not an error to refuse this instruction. It was liable to the objection that it singled out particular circumstances and omitted all reference to others of importance."

Evidence of these acts was properly submitted to the jury by the presiding judge, with very clear instructions that it was to be consider-

ed in determining whether there was negligence in the operation of the car or not.

[2] The question of whether the defendant should have given warning of the space between the platform and the car was also submitted to the jury, and we find no error in the refusal of the court to instruct the jury as a matter of law that no duty rested upon the defendant, under all the circumstances, to give warning. We think this was a question of fact to be determined by the jury.

[3] The bill of exceptions discloses that the defendant company had a regulation that required a motorman who brought a car into the Park Street station on the south-bound loop track to proceed to the first car stop sign, which would be at berth No. 2, in other hours than the rush hours, and that, if the car came into the station and reached a point opposite any of the preceding berths, and there was no car at berth No. 2, he should proceed slowly through the station and occupy berth No. 2; that it was his duty to take his car into this berth if he could; that if, when he entered the station, there was a car at berth No. 2, apparently getting ready to move out, it would be his duty to reduce the speed of his car to give the car ahead a chance to go out, and then to slide down into berth No. 2, if he could. This rule was intended to relieve congestion at the station. It is assigned as error that the presiding judge refused to instruct the jury, as requested by the defendant, that the defendant's regulation that all motormen in bringing their cars to a stop at the platform in question should proceed to berth No. 2, being the first car stop, except during rush hours, or to the next adjacent unoccupied berth, is a reasonable regulation. As this regulation in no way affected the conduct of the plaintiff, but was a regulation to be observed by its own employés in the operation of cars in this station, its reasonableness was properly submitted to the jury. New England R. R. Co. v. Hyde, 101 Fed. 401, 41 C. C. A. 549.

[4] The defendant's exception to that part of the charge of the presiding judge which is alleged to contain the request of the plaintiff below cannot be sustained, because it appears from the charge that it was not given as an instruction to the jury, but only as a statement of the plaintiff's contention.

[5] The other exception to a portion of the charge of the presiding judge:

"The plaintiff says that should be considered together with all other matters in arriving at your conclusion as to whether or not, under all the circumstances in the case, the defendant was guilty of negligence, and such is unquestionably the law"

—cannot be sustained, because, upon reference to that portion of the charge which immediately precedes it, it is evident that the word "that" referred to the bringing of the car nearly to a stop and then causing it to move along again. It was this operation of the car, by which it was brought almost to a stop, and then, with the plaintiff and others coming toward it, was moved along and stopped at a place where the edge of the platform curved away from the tracks, which the plaintiff alleged to be negligence in the operation of the car. The jury were therefore instructed that the practical stopping of the car and starting

it again "should be considered, together with all other matters, in arriving at your conclusion as to whether or not, under all the circumstances in the case, the defendant was guilty of negligence," and in this we find no error.

[6] The real question presented by the bill of exceptions and in the assignments of error is whether the presiding judge should have directed the jury to return a verdict for the defendant. The facts were undisputed, and whether the defendant was negligent or not, and whether the plaintiff was in the exercise of due care or not, depended upon the inferences which might be reasonably drawn from these facts. If, upon either of these questions, these inferences could lead a reasonable mind to only one conclusion—upon the first that the defendant was not guilty of negligence, or upon the second that the plaintiff was not in the exercise of due care—then clearly it was the duty of the presiding judge to have directed a verdict for the defendant; but if there were inferences which might be justifiably drawn from these facts by fair-minded men that would sustain the allegations of the defendant's negligence and the exercise of due care by the plaintiff, then it was the duty of the court to submit the evidence of these facts to the jury, although other equally fair-minded men might draw an opposite conclusion from them.

"When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court." Grand Trunk Railway Co. v. Ives, 144 U. S. 408, 417, 12 Sup. Ct. 679, 683 (36 L. Ed. 485).

"It is well settled," says Mr. Justice Brewer in Railroad Co. v. Powers, 149 U. S. 45, 13 Sup. Ct. 749, 37 L. Ed. 642, "that where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, and to be settled by a jury; and this, whether the uncertainty arises from a conflict in the testimony, or because the facts being undisputed, fair-minded men will honestly draw different conclusions from them."

[7] We think that there were inferences which might be drawn by fair-minded men from these facts which would lead to the conclusion that the defendant was negligent and that the plaintiff was in the exercise of due care at the time of the accident.

The plaintiff below was waiting, with other people, upon the platform, and when the Huntington Avenue car which she wished to board, on its south-bound trip, came into the station, it came to a position nearly opposite that part of the platform upon which she and others were waiting, and came almost to a stop—"practically to a stop," to use the plaintiff's language—so that she and others, supposing that the car would stop, started toward it to board it. It was a short open car; but, before they could get aboard, the motorman started the car, and the plaintiff, with others, followed along near the edge of the platform, which, at the place opposite where the plaintiff had been waiting, and for some distance in either direction, was straight and parallel with the tracks. She had noticed the edge of the platform where it was parallel with the tracks, and knew nothing about the curve at the south-

erly end, where the cement platform had been "cut back," as testified by the company's engineer, Mr. Mitchell, so that the edge of the platform curved away from the tracks.

Whether this operation of the car—its being brought nearly to a stop and then started along again, and finally stopped opposite that part of the platform where the edge curved away from the tracks—in view of the fact that the plaintiff, with others, was waiting to board the car, and walked along beside it toward the curve in the platform, constituted negligence on the part of the defendant, was properly submitted to the jury. Whether or not the plaintiff was in the exercise of due care, under the circumstances of the case, was also properly submitted to their determination, with the instruction that the burden of proving the same was upon the defendant. She had observed from the position where she stood waiting for the car that the edge of the platform was parallel with the tracks, and that it continued so in either direction as far as she observed. As she walked along beside the car, waiting for it to come to a full stop, there were people in front of her and behind her, those in front of her so near that she could touch them, and the question of whether, under these circumstances, she was in the exercise of due care in not observing that the edge of the platform curved away from the car as she walked along beside it, was a question of fact for the jury.

In Brisbin v. Boston Elevated Railway Co., 207 Mass. 553, 93 N. E. 572, and Harrington v. Boston Elevated Railway Co., 221 Mass. 299, 108 N. E. 943, under somewhat analogous conditions to those in the case before us, the court held that there was evidence of the defendant's negligence and of the plaintiff's exercise of due care to be submitted to the jury.

We are satisfied that there were inferences which the jury might justifiably draw from the evidence submitted to them that would lead to the conclusion that the plaintiff, while in the exercise of due care, received her alleged injuries through the negligence of the defendant.

Judgment of the District Court affirmed, with interest, and with costs in this court to the defendant in error.