NETTIE E. HARRINGTON *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.   November 8, 9, 1917. — February 28, 1918.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Negligence,* Elevated railway. *Elevated Railway. Evidence,* Competency, Opinion: experts. *Practice, Civil,* Conduct of trial, Exceptions, New trial. *Witness. Constitutional Law.*

In an action against a corporation operating an elevated railway for personal injuries sustained by stepping into an open space between a temporary station platform of the defendant and the step of a car forming part of a train of the defendant that was on tracks placed in a temporary location while extensive changes were being made in the arrangement of the station, where it appears that the design of the platform, the space between it and the cars and the relation of the rails to the platform were not permanent and were established by the defendant in accordance with its own plans, which were not approved by any public board, it is a question of fact on proper evidence, whether it was reasonable for the defendant, in the performance of the duty owed by it to its passengers, to provide guards or to give warning to persons about to enter the cars from the platform of the width of the space that they would have to step over.

In an action of tort for personal injuries alleged to have been sustained by reason of the defendant's negligence, all the circumstances under which the injuries

were received ordinarily may be put in evidence and a considerable degree of discretion is vested in the presiding judge at the trial as to admitting evidence to show the incidents immediately preceding and attendant upon the accident.

In the case above described the admission by the presiding judge of a question addressed to the plaintiff as a witness, whether as she was about to enter the car she was "in a position where" she "would have heard if anything had been said in regard to the space," was *held* not to be reversible error, this being treated as an abbreviated question calling for a statement of the facts as to the precise position of the plaintiff with reference to the brakeman.

In the same case it was *held* that the plaintiff properly was allowed to show by the defendant's engineer that the temporary location of the' defendant's platform and tracks at that station, as they were for a period of about eight weeks including the time of the plaintiff's injuries, was not approved by the railroad commission.

In the same case it was *held* that an expert engineer properly was permitted to testify that in his opinion the temporary platform in use at the time of the plaintiff's injuries was not a reasonably proper structure, this being a matter of engineering skill applied to complicated conditions and outside the range of common knowledge.

In the same case an expert engineer, called as a witness by the plaintiff, after having testified and having been cross-examined at length on matters within his special department of knowledge, was permitted on his redirect examination to testify that he had been employed by the defendant as an expert in engineering, and it was *held*, that, although it would have been a wiser exercise of discretion by the presiding judge to have excluded this question, it being the better practice not to receive such evidence, yet the evidence was not strictly incompetent and its admission was not reversible error.

In the same case a witness called by the defendant was at the time of the accident a motorman in the defendant's employ, and was asked, whether the defendant ran any trains of five cars between eleven and twelve o'clock at night. The presiding judge excluded the question. *Held,* that the exclusion of the question was not reversible error, as it did not appear, and the defendant had made no offer to prove, that the witness's knowledge of the train operations of the defendant was so comprehensive as to make his testimony on that subject of any value.

In the same case a question was raised whether the defendant ought not to have installed a sliding platform to bridge the space into which the plaintiff fell, and the defendant introduced testimony to the effect that its expert did not know of any place where sliding platforms were used for a ten inch space or for any space less than fifteen or sixteen inches. After this, the plaintiff was permitted to introduce evidence that at another station of the defendant a sliding-platform to bridge a space of eleven inches had been used several years after the accident. *Held,* that this evidence could not be said to be wholly incompetent, as it bore upon the weight to be given to the testimony of witnesses called by the defendant.

In the same case it was *held* that the presiding judge was right in refusing to make certain rulings which might have been applicable to an accident that happened in a subway, the station at which the plaintiff's injuries were received having been a temporary elevated one.

In the same case it also was *held* that the presiding judge was right in refusing to

make certain rulings which assumed the existence of facts that were not established indisputably.

In the same case it also was *held* that the presiding judge was right in refusing to make rulings that, whether correct or not, related to details and fragments of evidence concerning which the judge could not be required to make rulings or give instructions.

It is wrong for a judge who has presided at a trial to indorse upon a bill of exceptions presented to him for allowance, that a certain statement contained in it is without foundation in fact but that he will "allow it as a statement of fact to prevent the delay which would be caused by sending this case to a commissioner." Under R. L. c. 173, § 106, as amended by St. 1911, c. 212, § 1, a judge can allow exceptions only after making a preliminary finding that they "are conformable to the truth" and, if they are not conformable to the truth, he has no authority to allow them.

Where the judge who had presided at a trial indorsed upon a bill of exceptions the certificate quoted above, it was *held* that the excepting party was right in thereafter presenting to this court a petition to establish the truth of his exceptions.

At the trial of an action of tort against a corporation operating an elevated railway, for personal injuries caused by the alleged negligence of the servants of the defendant, the presiding judge during the trial "called the defendant's counsel to the bench, and, not in the hearing of the plaintiff's counsel and not in the hearing of the jury, but while the jury were in their seats, told the defendant's counsel that he ought to settle the case, that he ought to be willing to pay anywhere from $3,750 to $5,000 to settle the case, adding that that did not mean that the court would set aside a verdict for twice that amount." This was shown in support of a motion for a new trial, it being contended that this conduct of the judge was a violation of the defendant's rights under art. 29 of the Declaration of Rights, which provides that, "It is the right of every citizen to be tried by judges as free, impartial, and independent as the lot of humanity will admit." *Held,* that, although the judge well might have refrained from voluntarily naming an amount that he thought properly could be paid by the defendant in settlement of the plaintiff's claim, in the absence of any invitation from the parties to do this, yet the suggestion of a compromise was in no way inconsistent with the proper performance of his duties, and that the remarks of the judge quoted above, fairly construed, did not mean that the case had been prejudged by him.

In the same case it was *held* that there was no ground for taking the case out of the general rule that the granting or denial of a motion for a new trial rests in the fair discretion of the trial judge.

It also was *said* that it is only where there is an abuse of sound judicial discretion or an excess of jurisdiction or some similar error of law that this court can revise the exercise of this discretion by the trial judge.

In the same case it was *pointed out* that the defendant did not take an exception at the trial to the remarks of the judge which it made the basis of its motion for a new trial, nor did it move that the trial be suspended or that the jury be discharged by reason of the remarks, but took its chance of obtaining a verdict.

In the same case it was contended by the defendant that the record taken as a whole showed such an element of prejudice against it on the part of the presiding judge that a trial fair to it could not have been had, and it was *said*, that,

assuming that such a contention was open to the defendant without its having taken any exception on that ground, a careful examination of the entire record failed to reveal such conduct on the part of the judge as would constitute reversible error or convince this court that the defendant did not receive fair treatment at the trial.

TORT against the Boston Elevated Railway Company for personal injuries sustained shortly before midnight on Saturday, November 7, 1908, from falling between a temporary station platform at an elevated station of the defendant at the North Station in Boston and the step of a car forming part of a train of the defendant which the plaintiff was attempting to enter as a passenger. Writ dated January 14, 1910.

In the Superior Court the case first was tried before *Pratt, J.*, who ordered a verdict for the defendant. The plaintiff alleged exceptions, which after the death of *Pratt, J.*, were allowed by *Wait, J.*, and were sustained by this court in a decision reported in 221 Mass. 299.

The case was tried again before *White, J.* The conduct of the trial so far as material to the exceptions is described in the opinion. At the close of the evidence the defendant asked for certain rulings among which were the following:

"4. The fact that the defendant had not installed a movable platform at the place where the accident happened is not evidence of negligence.

"5. It was not negligence for the guard to call out 'wide step.'

"6. It was not negligence for the guard to fail to call out 'wide step.'

"7. No duty rested upon the defendant to give the plaintiff notice of the space between the car and the platform.

"8. If the space into which the plaintiff stepped was only ten inches or less in width, then the plaintiff cannot recover.

"9. If the plaintiff met with her accident at the rear door of the first car after it had stopped at its regular stopping place, then she cannot recover."

The judge refused to make any of these rulings and submitted the case to the jury with instructions which in part are described in the opinion.

The defendant excepted "to so much of the charge as related to

what had been done other nights, as to whether there should have been a more efficient notification."

The *ad damnum* named in the writ was $2,000. Previous to the trial the plaintiff had filed a motion, which was argued at the motion session, to raise the *ad damnum* to $10,000. The judge who heard the motion made an order leaving the motion to be passed on by the court at the time of the trial of the case. At the trial, after the jury had retired, the judge allowed the motion to raise the *ad damnum* to $10,000. Thereupon the counsel for the plaintiff said, "I was going, your honor, to file a motion to raise the *ad damnum* to $15,000." The judge said, "Well, where is it?" The counsel said, "I was going to draw it." The judge said, "Well, why don't you go ahead and do it?" The counsel then drew a motion to raise the *ad damnum* to $15,000. The defendant objected to its allowance. The judge said that he would pass on the motion after the jury had returned their verdict. On the same day the jury returned a verdict for the plaintiff in the sum of $10,000, and thereupon the judge allowed the motion to raise the *ad damnum* to $15,000, subject to the defendant's exception.

The defendant alleged exceptions, which were allowed by the judge.

The defendant also filed a motion for a new trial. The motion was denied by the judge, and the defendant filed a bill of exceptions, upon which the judge made the certificate in regard to their allowance that is quoted in the opinion. The defendant then filed a petition for the establishment of the truth of its exceptions, which was referred to a commissioner. The report of the commissioner was presented to this court, who allowed the exceptions as stated in the opinion and proceeded to consider them.

*J. T. Hughes*, for the defendant.

*J. W. Allen & H. W. Packer*, for the plaintiff.

RUGG, C. J. This is an action of tort to recover damages for personal injuries received by the plaintiff while attempting to board a car upon an elevated train of the defendant at the North Station in Boston shortly before midnight, at a time when extensive changes were under way rendered necessary by the construction of the Washington Street tunnel. The location of the tracks and the platform were temporary and the plaintiff received injuries

by stepping into a space between the station platform and the car. It was held when the case was here before as reported in 221 Mass. 299, that the plaintiff was entitled to go to the jury. The main facts there are narrated and need not be repeated. Different questions of law are presented now.

1. The plaintiff was permitted, subject to the exception of the defendant, to show that there were several persons in uniform and apparently employees of the defendant standing in a group outside the door from the station to the platform, that after passing them she saw no other employee or person in uniform on the platform and that a brakeman or guard standing between two cars near where she went into the hole said nothing to her in the way of warning. In this there was no error. The design of the platform, the space between it and the cars and the relation of the rails to the platform were not permanent and were established by the defendant in accordance with its own plans. These plans were not approved by any public board. They were not inflexible nor imperatively required in that precise form by the scheme adopted by the public authorities and imposed on the defendant. There was considerable latitude of choice to the defendant in the determination of these details. The relation of tracks to platform, as it had been before the construction of the changes had begun, was more nearly straight and there was less space for the passenger to step over in going from the platform to the car. This was the first time the plaintiff had been at this station since the changes had been in progress. Whether under these transient conditions it was reasonable for the defendant, in the performance of the duty owed by it to its passengers, to provide guards or to give warning, were questions of fact for the jury. *Plummer* v. *Boston Elevated Railway*, 198 Mass. 499, 508, 510. *Brisbin* v. *Boston Elevated Railway*, 207 Mass. 553.

The case is quite different from those of which *Falkins* v. *Boston Elevated Railway*, 188 Mass. 153, *Willworth* v. *Boston Elevated Railway*, 188 Mass. 220, *Hawes* v. *Boston Elevated Railway*, 192 Mass. 324, and *Seale* v. *Boston Elevated Railway*, 214 Mass. 59, are examples, where it has been held that, the platform being constructed by the transit commission, the defendant is not responsible for space between it and the cars even though the stop may be made opposite a curve, and that there is no obligation resting upon

the defendant, in the absence of disorder, to give warning of the space to persons about to enter or alight from cars. The extent of the space between the car and the platform is not the sole test. Where the structures are permanent a much wider space than that here disclosed is of no consequence in view of the conditions laid upon the defendant by the various statutes. *Hilborn* v. *Boston & Northern Street Railway,* 191 Mass. 14. *Anshen* v. *Boston Elevated Railway,* 205 Mass. 32. See also *Ryan* v. *Manhattan Railway,* 121 N. Y. 126. But the circumstances of the case at bar are quite different. The relation of the platform to the track was not intended to remain the same for a long time. It was unlike what it had been before. There was evidence that the space between car and platform might have been much reduced. Perhaps it was deeper and hence more dangerous than the spaces commonly disclosed in this class of cases.

For the same reason it was not error to deny the defendant's requests for rulings to the effect that the defendant was not required to give any notice of the space and that, if the space was only ten inches, the plaintiff could not recover. *Harrington* v. *Boston Elevated Railway,* 221 Mass. 299.

Moreover a considerable discretion was vested in the presiding judge in admitting evidence to show the incidents immediately preceding and attendant upon the accident. Such facts cannot be said to be without bearing upon the due care of the plaintiff, and may have been of assistance in enabling the jury to understand the conditions which confronted her. All the circumstances under which an injury is received ordinarily may be put in evidence.

2. The admission of the question, whether the plaintiff as she was about to enter the car was "in a position where" she "would have heard if anything had been said in regard to the space," was not reversible error. The pertinent inquiry in that connection was her precise position with reference to the brakeman. Where she stood and what was her posture, like facts respecting him, and the distance between the two, were material. While it would have been better practice, because less liable to run into an incompetent field, to have developed these basic facts by appropriate interrogatories, an abbreviated question including all these circumstances, subject as it was to cross-examination, does not appear to have been injurious to the defendant. See *Slattery*

v. *New York, New Haven, & Hartford Railroad,* 203 Mass. 453, 457. It is distinguishable from the question, whether she would have been likely to hear if anything had been said, held incompetent because a mere matter of opinion in *Commonwealth* v. *Cooley,* 6 Gray, 350.

3. There was no reversible error in permitting the plaintiff to show by examination of the defendant's engineer that plan 3, which delineated the temporary location of platform and tracks as they were for a period of about eight weeks including the time of the plaintiff's accident, was not approved by the railroad commission. It was pertinent as indicating that the defendant was not entitled respecting these structures to the protection against liability established by the decisions as to permanent structures, such as *Collins* v. *Boston Elevated Railway,* 217 Mass. 420, where earlier cases are collected. Since the presiding judge ruled that there was no duty resting on the defendant to have the plan approved and hence no negligence in not securing such approval, it is not necessary to consider whether St. 1897, c. 500, § 6, requiring approval in certain instances, applies to this kind of construction.

4. An expert engineer was permitted to testify that in his opinion the temporary platform in use at the time of the plaintiff's accident was not a reasonably proper construction. This was not a mere opinion about common things of ordinary construction, as to which the simplicity of common sense is a safer guide than the niceties of technical learning. *Whalen* v. *Rosnosky,* 195 Mass. 545. *Gleason* v. *Smith,* 172 Mass. 50. *Walker* v. *Williamson,* 205 Mass. 514. *Lynch* v. *C. J. Larivee Lumber Co.* 223 Mass. 335, 340. *Amstein* v. *Gardner,* 134 Mass. 4, 9. *Spokane & Inland Empire Railroad* v. *United States,* 241 U. S. 344, 351. It involved, as a necessary element of an intelligent answer, engineering skill directed to complicated conditions under which the platform, the curves, grades and alignment of tracks for the temporary uses must be constructed and maintained. His answer means that under these conditions an arrangement of structures might have been designed and built offering less hazard to the traveller than those adopted by the defendant. Manifestly this was outside the range of common knowledge. It was not an inference from proven facts as to which men of ordinary expe-

rience would not be left in doubt.  *New England Glass Co.* v.
*Lovell,* 7 Cush. 319, 321.  *Lang* v. *Terry,* 163 Mass. 138, 143.
*Bourbonnais* v. *West Boylston Manuf. Co.* 184 Mass. 250, 254.
*Roberts* v. *Vroom,* 212 Mass. 168.

5. A witness called as an expert engineer, having given evi-
dence at length respecting matters within his special department
of knowledge, on redirect examination was permitted to testify
that he had been employed by the defendant as an expert in en-
gineering.  It is not an uncommon practice to examine a witness,
offered as an expert, respecting his experience and the various
persons who have availed themselves of his superior knowledge.
Much must be left to the discretion of the presiding judge.  The
question and answer here complained of cannot be said as matter
of strict law of evidence to have been incompetent.  It would
have been a much better exercise of judicial discretion to have
excluded the evidence.  It is difficult to conceive of a case where
it would not be wiser discretion in the presiding judge to exclude
such an inquiry altogether whenever put.  Ordinarily it is prefer-
able practice for manifest reasons not to receive such evidence.
But, even where testimony has been regarded as "very objec-
tionable" in this particular, its admission is not treated as rever-
sible error if there is any justification whatever for the conduct of
the presiding judge.  *Conness* v. *Commonwealth,* 184 Mass. 541,
544.  *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 385.
*Fourth National Bank of Boston* v. *Commonwealth,* 212 Mass. 66,
69.  The present inquiry falls within that principle.

6. A witness, called by the defendant and at the time of the
accident a motorman in its employ, was asked whether the defend-
ant ran any trains of five cars between eleven and twelve o'clock
at night.  The exclusion of this question is not reversible error.
It does not appear that his knowledge of the train operations of
the defendant was so comprehensive as to make his testimony of
any value.  Moreover, no offer of proof was made.  *Cook* v.
*Enterprise Transportation Co.* 197 Mass. 7, 10.

7. One question raised at the trial was whether the defendant
ought, in the exercise of due care, to have installed a sliding plat-
form in order to bridge the space between the immovable plat-
form and the car door at which the plaintiff testified she was
injured.  There was also testimony that the distance between the

platform and the car door was the basis for the use by the defendant of movable platforms, that they were not regarded as desirable and were put in only where the space was so great as to overcome by added convenience objections to their use. As bearing upon this point, the defendant had introduced testimony to the effect that its expert did not know of any place where sliding platforms were used for a ten inch space or for any space less than fifteen or sixteen inches. Evidence that at another station of the defendant a sliding platform to bridge a space of eleven inches had been in use several years after the accident, cannot be said to have been entirely incompetent in this posture of the case. It bore upon the weight to be given to the witnesses called by the defendant. It is quite distinguishable from evidence of precautions taken by a defendant after an accident, which plainly is inadmissible.

8. There was no error in the refusal to give the several requests presented by the defendant. Whether due care required the defendant to install a movable platform at the place of injury as a part of its temporary structures, was a question of fact. As has been pointed out, the same rule of liability did not govern the obligation of the defendant as in the subway decision cases. The statement of legal obligation in *Plummer* v. *Boston Elevated Railway*, 198 Mass. 499, 509, is not relevant to these different facts. There was testimony to the effect that it would have been good engineering to have used such a platform under the conditions here disclosed at the particular place of injury. The criticisms urged by the defendant to this testimony affected its weight rather than its competency. It could not have been ruled as matter of law that it would have been negligence for the defendant's guard to call out or to fail to call out, "wide step." Here again the general principles applicable to the subway and tunnels, *Hogan* v. *Boston Elevated Railway*, 195 Mass. 313, do not necessarily govern duties of the defendant in the situation at bar.

9. Whether the train consisted of four or five cars was a question of fact on all the evidence. Whether the plaintiff could recover if she attempted to go upon the first car at a regular stopping place was also for the jury upon all the evidence. If it were a train of four cars, the plaintiff contended with some show of support in evidence that the first car might have been found to

have stopped at the place where the first car of a train of five cars would have stopped. Although it was or might have been important for the jury to determine these facts in arriving at a conclusion as to liability, the evidence respecting them was not so indisputable that a ruling of law rightly could be predicated upon the assumption that they were proved one way or the other. The presiding judge fairly and adequately dealt with this matter in his charge.

10. There was no error in the charge respecting the testimony of the witness Farrington to the effect that he stood between the two cars and called out to the passengers to "step wide." If this had been found to be the fact, there could hardly have been negligence on the part of the defendant. But whether he did so call out on the night in question was a point as to which the evidence was conflicting. The reference in the charge to testimony by other witnesses respecting what had occurred on other nights, as compared with the night in question, bore merely upon the weight to be given to Farrington's testimony. It is not open to exception.

11. So far as the subjects to which the requests of the defendant related were necessary parts of the charge, they were adequately covered, and, so far as they were refused, they either were not correct or were directed to details or fragments of evidence concerning which the presiding judge could not be required to give instructions. *Ayers* v. *Ratshesky*, 213 Mass. 589.

12. The presiding judge early in the trial inquired of counsel whether they had talked as to the settlement of the case, and said that they ought to consider that matter. Later the judge "called the defendant's counsel to the bench, and, not in the hearing of the plaintiff's counsel and not in the hearing of the jury, but while the jury were in their seats, told the defendant's counsel that he ought to settle the case, that he ought to be willing to pay anywhere from $3,750 to $5,000 to settle the case, adding that that did not mean that the court would set aside a verdict for twice that amount." This statement was inserted in the defendant's second bill of exceptions relating to matters arising on its motion for a new trial. The judge indorsed upon the exceptions that this statement was without foundation in fact but "I allow it as a statement of fact to prevent the delay which would be caused by sending this case to a commissioner." This was irregular. The

judge in the performance of his duty can allow exceptions only after making a preliminary finding that they "are conformable to the truth." R. L. c. 173, § 106, as amended by St. 1911, c. 212, § 1. If exceptions are not conformable to the truth, the presiding judge has no authority to allow them. He certainly had no power to allow them for any such cause as is stated in the present certificate. Justice can be done only when the truth and nothing but the truth is made the basis of adjudication. This court can not attempt to pass upon the rights of parties upon a record which is in any material particular unfounded in fact. Therefore the petition of the defendant to establish the truth of his exceptions rightly was presented. The report of the commissioner shows that in substance that bill of exceptions is conformable to the truth. It is established. *Moneyweight Scale Co., petitioner,* 225 Mass. 473.

13. "It is the right of every citizen to be tried by judges as free, impartial, and independent as the lot of humanity will admit." Declaration of Rights, art. 29. The conduct of the presiding judge did not violate the justly strict and lofty standard of our Constitution. It is not necessarily a transgression of judicial propriety to suggest to parties in appropriate instances the wisdom of a compromise of conflicting contentions. It is a suggestion which always should be ventured from the bench with caution. There are cases where the right or obligation at stake is not susceptible of concession without the profanation of principles which rightly may be held inviolable by one or more of the parties. Ordinarily a judge may presume in these days that the possibility of compromise has not been ignored by counsel or parties in cases where compromise is feasible or just. In *In re Nevitt,* 54 C. C. A. 622, it appeared that a judge had for several years "endeavored to persuade the parties to the controversy to compromise the litigation." It was said respecting that conduct when urged as a disqualification to a decision of the case on its merits by the same judge, that (page 626) "his earnest and systematic endeavors to effect a compromise of this controversy bespeak for him emphatic commendation. The policy of the law has always been to promote and sustain the compromise and settlement of disputed claims." This laudation goes rather far. But it shows that an intimation as to the practical sagacity of harmonizing adjustable differences is not of itself an impairment of the judicial function.

The judge well might have refrained from voluntarily naming an amount which he thought could be paid by the defendant in settlement of the plaintiff's claim in the absence of any invitation to this end from the parties. Manifestly every judge should be deeply solicitous not only to hold himself wholly impartial between contending litigants, but he should likewise be ever alert and careful to avoid every appearance by word or deed reasonably susceptible of being construed by those in the heat of partizanship as expressions of bias or prejudgment. On the other hand, under our system "the judge who discharges the functions of his office is . . . the directing and controlling mind at the trial, and not a mere functionary to preserve order and lend ceremonial dignity to the proceedings." His demeanor should not be "hesitatingly barren or ineffective." *Whitney* v. *Wellesley & Boston Street Railway,* 197 Mass. 495, 502. *Tildsley* v. *Boston Elevated Railway,* 224 Mass. 117, 119. He ought to know human nature and be familiar with practical affairs. His insight into the merits of the controversies pending before him needs to be clear, sympathetic, accurate. He should be strong, patient, learned, and above all unflinchingly courageous. It is the prevalent impression that it adds to the efficiency of a judge if at the same time his manner is dignified, his conduct tactful and his speech courteous. But however that may be, bluntness is not error of law. The essentials of sound judicial character lie far deeper than superficial deportment. The expression complained of in the case at bar fairly construed does not mean that the cause had been prejudged or that a motion to set aside the verdict, if one should be made, would not be considered according to its just deserts. The remarks made by the judge in denying the motion to set aside the verdict show that that decision was based upon a full consideration of its merits without partiality. See in this connection *Utz & Dunn Co.* v. *Regulator Co.* 130 C. C. A. 17, 20–22 (213 Fed. Rep. 315); *State* v. *Bohan,* 19 Kans. 28, 50–53; *In re Cameron,* 126 Tenn. 614, 650, 655, 660; *Elliott* v. *Hipp,* 134 Ga. 844, 848; *Lafayette* v. *Milton,* 129 La. 678.

14. It follows from what has been said that there is no error of law disclosed in the proceedings on the motion for a new trial. The general rule prevails that the granting or denial of such motion rests in the sound discretion of the trial judge. *Simmons* v.

*Fish,* 210 Mass. 563, 572. *Edwards* v. *Willey,* 218 Mass. 363. That rule applies in the case at bar. It is only when there is an abuse of sound judicial discretion, or excess of jurisdiction, or some similar error of law, that this court can revise the discretion of the trial judge. The several requests for rulings and grounds of exception need not be reviewed one by one. For the reasons stated, no error is disclosed in the refusal of all of them, either as not sound in law or not applicable to the facts.

15. The defendant did not take exception to the remarks of the judge when made, or move that the trial be suspended, or that the jury be discharged. As was said in *Crosby* v. *Blanchard,* 7 Allen, 385, 387, parties cannot "take their chance for a favorable verdict, reserving a right to impeach it or set it aside, if it happens to be against them, for a cause which was previously well known to their counsel." *Fox* v. *Hazelton,* 10 Pick. 275. *Gray* v. *Boston Elevated Railway,* 215 Mass. 143, 150. *Orrok* v. *Commonwealth Ins. Co.* 21 Pick. 456.

16. The defendant has argued that the record taken as a whole shows such an element of prejudice against it on the part of the presiding judge that a trial fair to it could not have been had. The case has been considered on the footing that such contention is open even though no exception was taken. See *Noyes* v. *Noyes,* 224 Mass. 125, and cases cited at page 134. It is not necessary to narrate the numerous expressions scattered through the record of a long trial upon which reliance is placed. Whatever else may be said respecting them, a careful examination of the entire record fails to reveal such conduct as constitutes reversible error. We are not convinced that the defendant did not receive fair treatment at the trial.

The result is that the petition for the allowance of exceptions is allowed and that each bill of exceptions is overruled.

*So ordered.*